[No. A113399. First Dist., Div. Five. Oct. 31, 2007.]

FRED H. WILLIAMS, Plaintiff and Respondent, v.
SnSANDS CORPORATION, Defendant and Appellant.

COUNSEL

Tommy A. Conner for Defendant and Appellant.

McCurdy & Ku and Henry Y. Ku for Plaintiff and Respondent.

OPINION

**JONES, P. J.**—The California prevailing wage law mandates the payment of prevailing wages to workers employed in the execution of a contract for public works. (Lab. Code, § 1771.)[1] Plaintiff and respondent Fred H. Williams was an employee truckdriver for defendant and appellant SnSands Corporation, doing business as S&S Trucking (hereafter S&S Trucking), who sought unpaid wages in this action. In the first phase of a bifurcated court

---

[1] All further section references are to the Labor Code.

trial, the parties presented to the court certain stipulated factual scenarios, involving the on-hauling of materials to, and the off-hauling of materials from, a public works construction project, and sought a determination of whether S&S Trucking's truckdrivers were entitled to prevailing wages in each circumstance. In a second phase, the trial court applied the phase one conclusions and awarded Williams $76,853.27 for unpaid wages.

S&S Trucking contends the trial court erred in concluding that its truck-driver employees were entitled to prevailing wages under the prevailing wage law for hauling building materials from public works construction sites to nonpublic works project sites. It also contends the amount of the court's award is not supported by the evidence.

## BACKGROUND

### Parties

S&S Trucking is engaged in both the trucking business and the materials supply business. The materials bought and sold include rock and sand. It has a substantial inventory of heavy equipment that includes tractors, trailers, loaders, bulldozers, power screens, and dump trucks. This equipment is used in the purchase, sale, and hauling of materials for construction projects, including rock, sand, gravel, dirt, and related materials. S&S Trucking sells these materials to the general public. It also has two recycling facilities where it receives, stores, separates and sells the aforementioned materials. In addition to construction materials, S&S Trucking hauls and disposes trash and other refuse to and from jobsites.

There are three primary means by which S&S Trucking obtains jobs. (1) It "hard bid[s]" on a project. (2) A contractor or customer telephones for an S&S Trucking truck to be dispatched to a specific location to pick up a particular load and deliver that load to another specific location. (3) Another trucking company or trucking broker requests the use of an S&S Trucking truck.

Williams began working for S&S Trucking as a truckdriver in July 1999. His duties included hauling building materials to and from public works projects.

### Labor Code

█ California's prevailing wage law provides that workers employed by contractors or subcontractors "in the execution of any contract for public work are deemed to be employed upon public work." (§ 1772.) Workers

employed on public works shall be paid at least the general prevailing rate for work of a similar character in the locality in which the public work is performed. (§ 1771.) The contractor to whom a public works contract is awarded, and any subcontractor thereunder, shall not pay less than the specified prevailing rate of wages to all workers employed in the execution of the contract. (§ 1774.)

### Complaint and Defense

The gravamen of Williams's second amended, and operative, complaint was that the work he performed for S&S Trucking was either work directly resulting from a public works contract or performed indirectly in the execution of a public works contract, and that S&S Trucking failed to pay him the prevailing rate for this work, in violation of the prevailing wage law.

The crux of S&S Trucking's defense was that when it was hired or dispatched to deliver materials to a public works construction site (on-hauling) or to take away materials from a public works construction site (off-hauling), it was not a subcontractor to the construction project's general contractor, and its workers were therefore not employed in the execution of the public works contract.

### Phase One Trial

In phase one of the trial, the parties submitted a stipulated statement of facts to the court and requested it to determine as a matter of law whether prevailing wages were due in four factual circumstances:

A. *On-haul of materials purchased from an open-to-the-public vendor of such materials.*

S&S Trucking dispatches one or more trucks driven by its employees to a public works project for delivery of rock, soil or other materials to be used in the construction of the project. S&S Trucking purchases the specified materials from a vendor of such materials who is open to the public for sale of such materials, delivers them to the jobsite, and deposits them at the jobsite as directed by one or more employees of the entity that hired S&S Trucking's services. After unloading the materials, the driver either leaves to acquire additional materials for the same project or is dispatched to another project.

B. *On-haul of materials owned by S&S Trucking and available for sale to the public.*

S&S Trucking dispatches one or more trucks driven by its employees to a public works project for delivery of rock, soil or other materials to be used in

the construction of the project. S&S Trucking owns the specified materials, and offers them for sale to the public. A contractor or subcontractor purchases the materials from S&S Trucking and hires S&S Trucking to deliver them to a public works jobsite. S&S Trucking dispatches one of its drivers to pick up one or more loads of the subject materials for delivery to the jobsite. The driver does so and deposits the materials at the jobsite as directed by one or more employees of the entity that hired S&S Trucking's services. After unloading the materials, the driver either leaves to acquire additional materials for the same project or is dispatched to another project.

C. *Off-haul of soil, concrete, gravel, rock or sand (or a mixture of these materials) from a public works project for resale.*

S&S Trucking dispatches one or more of its trucks driven by its employees to a public works project to pick up soil, concrete, gravel, rock or sand (or a mixture of these materials) to deliver them to one or more different sites to be used as fill or for another purpose specified by the contractor or owner of the other site(s). The driver picks up the materials as directed, delivers them to another site, and deposits them at that other site as directed by one or more employees of the receiving entity. After unloading the materials, the driver either leaves to acquire additional materials from the same public works project, or is dispatched to another project.

D. *Off-haul of soil, concrete, gravel, rock or sand (or a mixture of these materials) from a public works project for disposal.*

S&S dispatches one or more trucks driven by an S&S employees to a public works project to pick up soil, concrete, gravel, rock or sand (or a mixture of these materials) to deliver to one or more disposal sites not set up for the particular public works project. The driver picks up the materials as directed, delivers them to the disposal site or sites, and deposits the materials at the disposal site as directed by one or more employees of the receiving entity. After unloading the materials, the driver either leaves to acquire additional materials from the same public works project or is dispatched to another project.

*Phase One Statement of Decision*

Following trial on the four stipulated factual scenarios, the court found: "(1) S&S [Trucking] is in the business of selling supplies to the general public; and is not a business established specifically to furnish materials for specific public works contracts; (2) The sources of materials maintained by S&S [Trucking] are not established specifically for particular public contracts; (3) The sources of materials maintained by S&S [Trucking] are not

located at the site of the public works projects; (4) S&S [Trucking] qualifies as a materialman/material supplier for purposes of the exemption recognized in [*O. G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434 [127 Cal.Rptr. 799]]."

The statement then addressed each factual circumstance. As to fact patterns A and B, the on-hauling scenarios, the court found that S&S Trucking drivers were not entitled to prevailing wages.

As to fact patterns C and D, the off-hauling scenarios, the court found that drivers were entitled to prevailing wages.[2]

*Phase Two Trial*

In the second phase, the issues were whether Williams had in fact off-hauled materials from public works projects, and if so, the amount of his unpaid wages.

Evidence of Williams's public works off-haul jobs was in the form of approximately 400 "truck tags." A truck tag is filled out and signed by the driver and shows the shipper of the material, the point of origin and destination of the haul, the time the material was loaded and unloaded, and the net worktime. The tags were either "undisputed," meaning there was no dispute that the tag represented a public works hauling job, or "disputed," meaning the parties disagreed as to whether the tags represented public or private works jobs.

*Phase Two Statement of Decision*

As to the disputed truck tags, the trial court found that S&S Trucking failed to meet its burden of proving that 21 specifically enumerated disputed tags did not involve hauling from a public works site. It therefore found that Williams was entitled to prevailing wages for the hours represented by these disputed tags, as well as for the undisputed tags, plus prejudgment interest thereon.

## DISCUSSION

### I. *Prevailing Wages for Off-hauling*

S&S Trucking contends its drivers are not entitled to prevailing wages for hauling materials away from a public works project site to a nonpublic works site unless they are hauling refuse to a disposal site.

---

[2] The trial court added an additional fact pattern, the off-hauling of refuse from a public works site to a dump. S&S Trucking does not dispute that such off-hauling is subject to prevailing wages under section 1720.3.

Under the prevailing wages law, " 'public works' " means "Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds . . . . For purposes of this paragraph, 'construction' includes work performed during the design and preconstruction phases of construction including, but not limited to, inspection and land surveying work." (§ 1720, subd. (a)(1).) Additional definitional language is set forth in section 1720.3 related to hauling refuse from a public works site for disposal. Section 1720.3 provides: "For the limited purposes of Article 2 (commencing with Section 1770), 'public works' also means the hauling of refuse from a public works site to an outside disposal location, with respect to contracts involving any state agency . . . ." (§ 1720.3.)

"Contractor" and "subcontractor," for purposes of the prevailing wage law, include "a contractor, subcontractor, licensee, officer, agent, or representative thereof, acting in that capacity, when working on public works . . . ." (§ 1722.1.) Workers "employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work." (§ 1772.)

Here, we must interpret and apply these statutory provisions to resolve whether workers performing S&S Trucking's agreements to *off*-haul material from a public works site were employed "in the execution" (§ 1772) of the public works contract.

■ In interpreting other provisions of California's prevailing wage law, our Supreme Court observed: "The object that a statute seeks to achieve is of primary importance in statutory interpretation. [Citations.] The overall purpose of the prevailing wage law . . . is to benefit and protect employees on public works projects. This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees. [Citations.]" (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 987 [4 Cal.Rptr.2d 837, 824 P.2d 643].) Given the overarching purpose of the prevailing wage law to protect and benefit employees on public works projects, courts are to construe the prevailing wage law liberally. (*City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 949–950 [22 Cal.Rptr.3d 518, 102 P.3d 904]; *Southern Cal. Lab. Management Etc. Committee v. Aubry* (1997) 54 Cal.App.4th 873, 882 [63 Cal.Rptr.2d 106].)

■ In determining legislative intent, courts are required to give effect to statutes " ' "according to the usual, ordinary import of the language employed

in framing them." ' " (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978], quoting *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The familiar meaning of "execution" is "[t]he action of carrying into effect (a plan, design, purpose, command, decree, task, etc.); accomplishment" (5 Oxford English Dict. (2d ed. 1989) p. 521); "[t]he act of carrying out or putting into effect" (Black's Law Dict. (8th ed. 2004) p. 609, col. 1); "the act of carrying out fully or putting completely into effect, doing what is provided or required" (Webster's 10th New Collegiate Dict. (2001) p. 405). ▮ Therefore, the use of "execution" in the phrase "in the execution of any contract for public work," plainly means the carrying out and completion of all provisions of the contract.

The analysis in *O. G. Sansone Co. v. Department of Transportation, supra,* 55 Cal.App.3d 434 (*Sansone*), of who is, and who is not, a subcontractor obligated to comply with the state's prevailing wage law also informs our assessment of the intended reach of the prevailing wage law to "[w]orkers employed . . . in the execution of any contract for public work." (§ 1772.) *Sansone* concerned a contract for a highway construction project that called for a specific amount of a particular aggregate subbase. (55 Cal.App.3d at p. 439.) The prime contractor, Sansone, acquired the subbase material pursuant to private "borrow agreements" from third parties.[3] (55 Cal.App.3d at p. 439.) It subcontracted with Wright Brothers Transportation to haul the subbase material; Wright Brothers subcontracted a portion of the hauling work to John W. Heck Trucking. (*Ibid.*) The Department of Transportation withheld a portion of the full contract price from Sansone because Wright and Heck had not paid their employees the prevailing wage. (*Id.* at p. 440.) Sansone argued that Wright and Heck were not subcontractors within the meaning of the prevailing wage law. (*Id.* at p. 441.)

In determining that the Wright and Heck drivers were entitled to prevailing wages under the circumstances, *Sansone* found useful the reasoning applied by *H. B. Zachry Company v. United States* (Ct.Cl. 1965) 344 F.2d 352 (*Zachry*) to the Davis-Bacon Act, the federal prevailing wage law (40 U.S.C. § 276a et seq.). In *Zachry*, prime construction contractor Zachry executed a "[s]ubcontract" with an independent trucking company to transport building materials from the supplier to the project site. (344 F.2d at p. 354.) *Zachry* noted that the Secretary of Labor had long excluded from prevailing wage coverage employees of bona fide material suppliers who sold building materials to a contractor engaged in a public works project. To qualify for the exemption, the material suppliers had to be selling supplies to the general

---

[3] The "borrow agreement" was presumably related to use of a "borrow pit," which is an excavated area where material or earth has been borrowed to be used as fill at another location. (Webster's 3d New Internat. Dict. (2002) p. 257.)

public, the plant could not be established specially for the particular public works contract, and the plant could not be located at the project site. *Zachry* concluded that the independent trucking company, a major transporter of construction materials in the area, was not a subcontractor under the Davis-Bacon Act because the suppliers of the building materials that the trucking company transported also sold the materials to the general public, and the plant was not established specifically to furnish materials for prime construction contractor Zachry's public works contract. It held the trucker's employees were not covered by the labor laws "because of the nature of the function [the trucking company] performed, namely, the delivery of standard materials to the site—a function which is performed independently of the contract construction activities. We think this decision is a logical extension of the congressional intent to exclude employees of materialmen from the coverage of the Davis-Bacon Act." (344 F.2d at p. 361.)

In contrast to the facts in *Zachry*, *Sansone* observed that prime contractor Sansone had not acquired the particular subbase materials, which the public works contract specified it was to furnish, through a standard commercial supplier. It had acquired them from third parties pursuant to private borrow agreements. Moreover, subcontractors Wright and Heck hauled the subbase materials from locations adjacent to and established exclusively to serve the project site, and delivered the materials to the project site. (*Sansone, supra*, 55 Cal.App.3d at p. 443.)

*Sansone* also applied the reasoning of *Green v. Jones* (1964) 23 Wis.2d 551 [128 N.W.2d 1] (*Green*), in which the Wisconsin court applied the Wisconsin prevailing wage law to a trucking company that delivered roadbed materials to various highway improvement project sites. (*Sansone, supra*, 55 Cal.App.3d at p. 444.) In *Green*, the trucking company contracted with the material suppliers to deliver the materials for some projects and contracted directly with the general contractor for delivery to other projects. *Green* held that the trucking company drivers were covered by the prevailing wage law because the materials they delivered were immediately distributed over the roadway surface. Their tasks "were functionally related to the process of construction." (*Green, supra*, 128 N.W.2d at p. 7.) As soon as the driver dumped or spread the material, it was leveled by graders or mixed with cement under the general contractor's supervision. "The delivery of materials was an integrated aspect of the 'flow' process of construction." (*Ibid.*) Similarly, *Sansone* observed, prime contractor Sansone contracted to furnish a particular material for the project, it obtained borrow sites designed exclusively to supply the project site with this particular material, and it engaged Wright, who engaged Heck, to haul the material from the borrow site to the project site. Because Sansone contracted with Wright to "perform an integral part of [Sansone's] obligation under the prime contract," Wright and Heck were subcontractors

within the meaning of the prevailing wage law, not material suppliers. (*Sansone, supra*, 55 Cal.App.3d at p. 445.)

■ Critical to *Sansone's* analysis of whether the truckdrivers employed by subcontractors Wright and Heck were employed "in the execution of [a] contract for public work" (§ 1772) was whether the trucking companies were bona fide material suppliers conducting an operation truly independent of the performance of the general contract for public work, as opposed to conducting work that was integral to the performance of that general contract. We conclude that what is important in determining the application of the prevailing wage law is not whether the truckdriver carries materials *to* or *from* the public works project site. What is determinative is the role the transport of the materials plays in the performance or "execution" of the public works contract.

*Sansone's* rationale for exempting the "delivery" of standard commercial building materials from the prevailing wage statute is that the truckdriver who delivers the materials is employed by a truly independent materials supplier and does not himself immediately and directly incorporate the hauled material into the ongoing public works project. *Sansone* employed the factors and circumstances present in *Zachry* and *Green* to determine the existence of the "delivery" exemption: Were the materials obtained from an independent material supplier who sells supplies to the general public or to third parties having no relationship to the public works project? (*Sansone, supra*, 55 Cal.App.3d at pp. 442, 443.) Were the supplied materials taken from sources or locations not adjacent to, or established exclusively to serve, the project site? (*Id.* at p. 442.) Were the materials supplied pursuant to the prime contractor's private borrow contracts designed to supply the public works project exclusively? (*Id.* at p. 443.) Were the hauled materials directly and immediately distributed by the truckdriver into the ongoing, onsite project? (*Id.* at p. 444.)

■ The finding that a trucker has the status of a bona fide materials supplier for his work of "supplying" generic materials to a public works site and is therefore exempt from prevailing wages under the *Sansone* criteria is not determinative of whether that trucker remains exempt from prevailing wages for the work of off-hauling materials from the public works site and transporting them to another location, as set forth here in stipulated factual scenarios C and D. The off-hauling question must be analyzed anew. Following *Sansone, supra*, 55 Cal.App.3d 434, we consider whether the transport was required to carry out a term of the public works contract; whether the work was performed on the project site or another site integrally connected to the project site; whether work that was performed off the actual construction site was nevertheless necessary to accomplish or fulfill the contract.

As to both factual scenarios C and D—the off-haul of materials from a public works project site for resale to the general contractor or owner of another site and the off-haul of materials to a disposal site—the parties offered no evidence of any of the contracts governing the public works projects for which S&S Trucking did the off-hauling jobs. Although Williams argues on appeal that "it is necessary to remove" excess dirt, rock, sand, or gravel "as part of the completion of the overall [public works] project," his argument is conclusory. There was no evidence regarding the custom and practice of a general contractor's obligation in a public works contract to remove unused materials from the public works site. Nor was there evidence that the prime contractor at the public works project site directed how S&S Trucking was to make the delivery of the materials to the other location or directed how the materials were to be used at the other location. In fact, according to the two scenarios, it was the receiving entity that directed how the materials were to be deposited at the second location. On this record, we conclude the off-hauling is unrelated to the performance of the prime public works contract, and Williams fell within the material supplier exception. S&S Trucking's off-hauling of the generic materials to a locale bearing no relation to the public works project site, as described in the two scenarios, was no more an integral part of the process of the public works project than the delivery of generic materials to the public works site by a bona fide material supplier. In the absence of evidence that, either by contract or custom, the off-hauling described in scenarios C and D was " 'an integrated aspect of the "flow" process of construction' " (*Sansone, supra,* 55 Cal.App.3d at p. 444, quoting *Green, supra,* 128 N.W.2d at p. 7), the prevailing wage statute was not applicable to the off-hauling performed by Williams.

█ A similar analytical framework appears to have been employed in two determinations by the Director of the Department of Industrial Relations as to who is responsible for making prevailing wage determinations. (§ 1770.) Although the ultimate responsibility for construction of a statute lies with the courts, an agency's interpretation of the meaning and legal effect of a statute, albeit not binding, is entitled to the courts' consideration and respect. Courts view the agency's interpretation in the factual context. (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 436 [2 Cal.Rptr.3d 699, 73 P.3d 554].)

Public Works Case No. 2000-078 (Aug. 6, 2001), Rosewood Avenue/Willoughby Avenue Sewer Interceptor, City of Los Angeles (*Rosewood Avenue*) presented a question of prevailing wages for off-hauling. The city engaged general contractor Buntich to lay sewer pipe below city streets. Buntich hired Pacific Coast Trucking to haul dirt excavated from the construction site to various landfills. Generally the dirt had to be dried before it could be taken to the landfills. Buntich placed the wet dirt into the Pacific trucks, Pacific dumped the wet dirt onsite for drying, and, when it was dry, Buntich reloaded the stockpiled dirt onto Pacific trucks for off-hauling to the

landfill. The dirt was not refuse, i.e., worthless or a useless part of something (see 13 Oxford English Dict. (2d ed. 1989) p. 494); it was used to cover the garbage at the landfill. The director concluded the "hauling work performed by Pacific is also public work because it is performed in the execution of the on-site public work. For this reason, prevailing wages must be paid to the Pacific drivers, who not only hauled the dirt from the trenches to the drying area, but off-hauled the dirt to the landfill dumps."

*Rosewood Avenue* relied on an earlier determination of the director, Public Works Case No. 1999-081 (Mar. 16, 2000), Granite Construction Company (*Granite*). A county engaged Granite to repave a road. Under the contract Granite agreed to clear, grub and remove pavement and excess dirt. Granite employees and Hildebrand Trucking employees off-hauled the roadway excavation material to another public works site. The director determined that because the onsite road excavation and repaving was a public work, the hauling away of the excavation material was also a public work because, "as part of the contract between Granite and the County, it is performed in execution of the on-site public work." Therefore, the workers performing the off-hauling were entitled to prevailing wages.

These two decisions are distinguishable from factual scenarios C and D at issue here. In *Granite*, the public works contract obligated the prime contractor to remove the excavated pavement and dirt. Thus, the off-hauling was specifically incorporated into the public works project.[4] In *Rosewood Avenue*, hauling away the excavated dirt was functionally related to the process of the particular public works project: laying a pipe below the street. Moreover, the general contractor, not the trucking company, loaded the dirt onto the trucks.

In this case, there was no evidence that the terms of the public works contracts governing the projects from which S&S Trucking did the off-haul jobs required the prime contractor to off-haul generic building materials. Nor was there evidence of the nature of the public works projects from which S&S Trucking's off-hauling occurred. Consequently, there was no evidence from which a determination could be made that the off-hauling was "an integrated aspect of the 'flow' process" (*Sansone, supra,* 55 Cal.App.3d at p. 444) of the project. Thus, there was no evidence that Williams was a subcontractor entitled to prevailing wages.

---

[4] We note that while a term in the public works contract governing the off-hauling activity is evidence to be considered in determining whether the off-hauling task is the work of a subcontractor within the meaning of the prevailing wage law, it is but a factor and is not necessarily determinative.

## II. *Monetary Award*

Given our conclusion that Williams was not entitled to prevailing wages for the off-hauling jobs as described in scenarios C and D, we need not address S&S Trucking's alternative contention that the court miscalculated the amount of unpaid prevailing wages due him for those jobs.

## DISPOSITION

The judgment is reversed. Parties to bear their own costs.

Simons, J., and Needham, J., concurred.