[No. E052582. Fourth Dist., Div. Two. June 15, 2012.]

HOUSING PARTNERS I, INC., Plaintiff and Appellant, v.
JOHN C. DUNCAN, as Director, etc., Defendant and Respondent.

COUNSEL·

Atkinson, Andelson, Loya, Ruud & Romo, Thomas W. Kovacich and Jennifer D. Cantrell for Plaintiff and Appellant.

Vanessa L. Holton, Steven A. McGinty and John J. Korbol for Defendant and Respondent.

OPINION

**CODRINGTON, J.—**

I

INTRODUCTION

Appellant Housing Partners I, Inc. (HPI), appeals from a judgment denying its petition for writ of mandate against respondent John C. Duncan, the Director of Industrial Relations for the State of California (Director). In administrative proceedings, the Director determined that a low-income housing project developed by HPI was a "public work" within the meaning of Labor Code section 1720[1] and was not subject to a statutory exception to the usual requirement for payment of prevailing wages on a public works project. The Director's determination could mean HPI would have to pay higher labor costs on its low-income housing project and possibly be "subject to a prevailing wage and penalty assessment, fines, lawsuits and disciplinary action, and . . . barred altogether from bidding on future public works projects." (Fowler, *Contractor Beware: The Fine Line Between "Public Works" and "Private Projects" Under California's Prevailing Wage Law* (2010) vol. 20, No. 4, Real Estate Newsalert.)

HPI's appeal involves two statutory exceptions to the requirement for payment of prevailing wage on a public works project and concerns the interplay of two important public policy goals: "encouraging the construction of low-cost housing and ensuring compliance with the prevailing wage requirements." (*State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 294 [76 Cal.Rptr.3d 507].)

The prevailing wage law requires that workers employed on public works projects be paid prevailing wages. (§§ 1771, 1774.) Various exceptions to that rule are found at section 1720, defining the meaning of public works. The

---

[1] All statutory references are to the Labor Code unless stated otherwise.

two exceptions which are the subject of this appeal are section 1720, subdivision (c)(4) and (6)(E). One exception, section 1720, subdivision (c)(4), applies to affordable housing projects that receive money from a redevelopment agency's low- and moderate-income housing fund. Another exception, section 1720, subdivision (c)(6)(E), applies to residential projects that receive below-market interest rate loans if the project dedicates a percentage of its units to low-income occupants. Because a combination of three kinds of funding sources was used for the subject project, the Director concluded that neither exception under section 1720, subdivision (c)(4) or subdivision (c)(6)(E) could be satisfied. Instead, the project was subject to the requirement for payment of prevailing wages.

HPI argues this court should reverse the Director's administrative decision for several reasons. First, HPI contends principles of statutory construction require statutes to be interpreted reasonably to avoid absurd results. Next, HPI asserts the legislative history of section 1720 establishes a clear legislative intent that the exemptions be harmonized together. Third, reading the exemptions in concert with each other furthers the public policy of providing affordable housing. Finally, the Director's interpretation of section 1720 renders the statute so vague as to violate HPI's right of due process.

In opposition, the Director counters that the exemption provided in section 1720, subdivision (c)(4) does not apply because it exempts affordable housing projects paid for solely with funding from a low- and moderate-income housing fund, or by a combination of such funds and private funds. The subject project did not qualify because, while some of its funding was obtained from a qualified fund, other funding was not. Similarly, the exemption stated in section 1720, subdivision (c)(6)(E) does not apply because it exempts certain affordable housing projects when the public funding element is limited to below-market interest rate loans. Here only part of the project's funding consisted of below-market interest rate loans, thus taking the project outside the scope of the section 1720, subdivision (c)(6)(E) exemption.

We agree with the Director that the project did not qualify for either of the claimed exemptions from the prevailing wage law. We affirm the judgment.

## II

### THE PREVAILING WAGE LAW

The prevailing wage law, sections 1720 through 1861, is a comprehensive statute governing the minimum wage standards on public works construction projects. (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 986 [4 Cal.Rptr.2d 837, 824 P.2d 643].) All workers employed on public

works costing more than $1,000 must be paid not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which public work is performed. (§ 1771.)

Under California law, a project is considered a "public work" if it is paid for, "in whole or in part out of public funds," among other requirements. (§ 1720, subd. (a)(1).) Whether a particular construction project constitutes a "public work" subject to the prevailing wage requirements is determined by reference to section 1720. Section 1720, subdivision (a)(1), defines "public works" to include: "Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds." Section 1720, subdivision (b)(1) defines the phrase "paid for in whole or in part out of public funds" to include, among other things, direct payments of money "or the equivalent of money by the state or political subdivision" and "loans, interest rates, or other obligations . . . that are paid, reduced, charged at less than fair market value, waived, or forgiven by the state or political subdivision." (§ 1720, subd. (b)(1), (4).)

Section 1720, subdivisions (c) and (d) set forth a number of exemptions to the prevailing wage law for publicly financed housing projects. One exemption, section 1720, subdivision (c)(4), applies to affordable housing projects receiving money from a redevelopment agency's low- and moderate-income housing fund. Another exemption, found in section 1720, subdivision (c)(6)(E), applies to low-income residential projects that receive public low-interest loans.

 The Director of the Department of Industrial Relations is responsible for setting the general prevailing wage according to statutory criteria. (§ 1770.) The director is also charged with issuing opinions regarding whether a specific project or type of work requires compliance with the prevailing wage law. (Cal. Code Regs., tit. 8, § 16001, subd. (a)(1); *Lusardi Construction Co. v. Aubry, supra*, 1 Cal.4th at pp. 988–989.) Any interested party may file a request with the director to determine whether a project is covered under the prevailing wage law. (Cal. Code Regs., tit. 8, § 16001, subd. (a)(1); 1 Cal.4th at pp. 988–989.)

## III

## FACTUAL AND PROCEDURAL BACKGROUND

There is no material dispute between the parties about the facts.

### A. *The Senior Housing Project*

The subject project, the Vista Del Sol Senior Complex, is an affordable senior housing development in Redlands, California. The project includes 71

rental housing units. Fifty-three units are designated for occupancy by low- and very-low-income seniors. Seventeen units are rented to seniors at market rates and one unit is reserved for the property manager.

HPI is the owner and developer of the project. HPI is a nonprofit, tax-exempt public benefit corporation certified by the County of San Bernardino to develop, rent, sell, and manage affordable housing properties. In 2008, HPI purchased the project site from the Housing Authority for the County of San Bernardino (Housing Authority), a public entity separate from the county.

The project was not financed through a single source of funding. Instead, funding for construction came from a combination of three kinds of loans from the County of San Bernardino, a redevelopment agency, and the Housing Authority. A below-market interest-rate loan from the County of San Bernardino (HOME Loan) is in the amount of $1,702,591, with deferred interest of 3 percent, to construct the 11 units intended for very-low-income seniors. A below-market interest-rate construction loan from the Housing Authority (Housing Authority Loan) is in the amount of $6,150,000 at 3 percent interest. A no-interest loan (Agency Loan) is a $4 million interest-free loan from the City of Redlands Redevelopment Agency, funded with moneys from "Low- and moderate-income housing funds" established under Health and Safety Code sections 33334.2 and 33334.6.

B. *Determination of Prevailing Wage*

In March 2009, an interested party known as CANDO Contract Compliance (CANDO) filed a request for determination with the Director, alleging the Vista Del Sol project was subject to the prevailing wage law. HPI and the Housing Authority filed a brief concerning CANDO's request for determination.

In November 2009, the Director issued a prevailing wage coverage determination (the Determination) pursuant to California Code of Regulations, title 8, section 16001, subdivision (a). (*Vista del Sol Senior Housing Complex, City of Redlands*, Public Works case No. 2009-010 (Nov. 2, 2009).) The Director concluded that, even though the three sources of funding individually and separately satisfied the criteria for exemption, the project as a whole nevertheless required the payment of prevailing wages. The Director's determination was based on the reasoning that the exemptions found in section 1720 could not be "combined" together on the project to qualify for exemption from the prevailing wage law.

More particularly, the Director determined the project was a public work subject to the prevailing wage law because it constituted construction done

under contract "and paid for in whole or in part out of public funds" within the meaning of section 1720. The Director went on to determine that the two below-market rate loans (the Housing Authority Loan and the HOME Loan) qualified the project for the exception described under section 1720, subdivision (c)(6)(E). The Determination found the Agency Loan was funded through a qualifying low- and moderate-income housing fund, and therefore satisfied the requirements for exemption under section 1720, subdivision (c)(4). Nevertheless, the Determination held section 1720, subdivision (c)(4) did not apply because this funding source could not be combined with another funding source on the same project to qualify for an exemption. Therefore, the Director concluded the project was subject to the prevailing wage law.

HPI filed an administrative appeal. The Director denied HPI's appeal and upheld its prior determination that the exemptions under section 1720, subdivision (c)(4) and (6) could not be "combined," and the project was a public work subject to payment of prevailing wages.

HPI petitioned the trial court for a writ of mandate pursuant to Code of Civil Procedure section 1085. HPI's petition sought reversal of the Director's administrative finding on the grounds that the Director misinterpreted section 1720 and that the Determination violated HPI's due process rights. The trial court denied HPI's petition for writ of mandate. This appeal followed.

## IV

## DISCUSSION

HPI's central argument is that the two exceptions stated in section 1720, subdivision (c)(4) and subdivision (c)(6)(E) are ambiguous and must be harmonized. (*Mattice Investments, Inc. v. Division of Labor Standards Enforcement* (1987) 190 Cal.App.3d 918, 923 [235 Cal.Rptr. 502].) HPI offers a lengthy discourse about why the exceptions require interpretation. HPI calls on legislative history to support its position. Finally, HPI evokes public policy considerations in favor of affordable housing and due process concerns based on vagueness in statutory interpretation.

### A. Standard of Review

The issue of standard of review—specifically, how much deference is due the Director's determination—has been discussed exhaustively in *State Building & Construction Trades Council of California v. Duncan, supra,* 162 Cal.App.4th at pp. 302–305.) Although HPI argues the reviewing court should give no deference whatsoever to the Director's determination, the

standard of review is more nuanced: " 'In conducting our review, we must exercise our independent judgment in resolving whether the project at issue constituted a "public work" within the meaning of the [prevailing wage law].' [Citation.] Where, as here, the facts are undisputed, and the purely legal issues involve the interpretation of a statute an administrative agency is responsible for enforcing, we exercise our independent judgment, 'taking into account and respecting the agency's interpretation of its meaning.' (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; see *State Building & Construction Trades Council of California v. Duncan*[, *supra*,] 162 Cal.App.4th 289, 304 [76 Cal.Rptr.3d 507] . . . .)" (*Azusa Land Partners v. Department of Industrial Relations* (2010) 191 Cal.App.4th 1, 14 [120 Cal.Rptr.3d 27].)

The agency's interpretation is " ' "one of several interpretive tools that may be helpful. In the end, however, '[the court] must . . . independently judge the text of the statute.' " [Citation.]' [Citations.]" (*Azusa Land Partners v. Department of Industrial Relations, supra*, 191 Cal.App.4th at p. 14.) An administrative agency's interpretation does not bind judicial review but it is entitled to consideration and respect. (*Williams v. SnSands Corp.* (2007) 156 Cal.App.4th 742, 753 [67 Cal.Rptr.3d 606].)

Nevertheless, it is the judiciary which has the ultimate authority for determining the meaning of a statute. (*Yamaha Corp. of America v. State Bd. of Equalization, supra*, 19 Cal.4th at pp. 11–12.) "Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth." (*Yamaha, supra*, at pp. 7–8.) "[W]hile we consider the Director's current interpretation of section 1720, we do not extend that interpretation any particular deference. Because there is no factual dispute, only the question of how that statute is to be construed and applied, we exercise our independent judgment. [Citations.]" (*State Building & Construction Trades Council of California v. Duncan, supra*, 162 Cal.App.4th at pp. 304–305.)

In applying our independent judgment, we employ a narrow construction of the subject statute and the two statutory exceptions. (*County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 966 [91 Cal.Rptr.2d 66]; *Board of Medical Quality Assurance v. Andrews* (1989) 211 Cal.App.3d 1346, 1355 [260 Cal.Rptr. 113].)

## B. *The Operation of the Two Exceptions*

HPI proposes to consolidate the two statutory exceptions into one larger exception, to qualify for exemption from the prevailing wage law. According to HPI's suggested interpretation of section 1720, subdivision (c), if the funding for a project is composed of qualified housing funds combined with below-market interest rate funding, rather than one or the other, the project should qualify for an exception from the prevailing wage law. HPI asserts that "fidelity to the literal language of a statute cannot stand where, as here, a literal construction result in absurd and unintended consequences. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134].)" HPI maintains it is nonsensical that a project receiving both types of funding should not be exempt from the prevailing wage law.

Respondent contends that HPI's approach to statutory interpretation confuses the exception afforded to a project with the various kinds of public funding sources that qualify a project for an exception.[2] HPI argues that only a project may qualify for exemption from the prevailing wage law under section 1720, subdivision (c)(4) and (6)(E). (*Azusa Land Partners v. Department of Industrial Relations, supra*, 191 Cal.App.4th at pp. 36–37.) Respondent urges that the two discrete exemptions cannot be joined to form a category of exemption that does not exist in the statutory language.

■ One difficulty with HPI's argument is the two exceptions are not demonstrably inconsistent with one another, necessitating reconciliation. Section 1720, subdivision (c)(4) applies to a project receiving money *solely* from a qualified housing fund or from a combination of housing funds and private funds. In contrast, subdivision (c)(6)(E) applies to a project receiving below-market interest rate public funding. The exceptions operate independently, neither expressly including nor excluding one another. Had the Legislature intended for the two exceptions to operate together, it would have been simple to draft the statute that way. As the statute currently exists, however, the two exceptions are distinct and operate separately.

### 1. *Section 1720, Subdivision (c)(4)*

■ Section 1720, subdivision (c)(4) plainly states that it provides an exception from the prevailing wage law for an affordable housing project financed by redevelopment money, alone or combined with private funds. Projects "that are paid for solely with moneys from a Low and Moderate Income Housing Fund established pursuant to Section 33334.3 of the Health

---

[2] In light of our conclusions, as set forth below, we deem it unnecessary to analyze fully the parties' argument about whether the exceptions to the prevailing wage law are project based or funding based.

and Safety Code or that are paid for by a combination of private funds and funds available pursuant to Section 33334.2 or 33334.3 of the Health and Safety Code do not constitute a project that is paid for in whole or in part out of public funds." (§ 1720, subd. (c)(4).) Thus, section 1720, subdivision (c)(4) contemplates a project financed by housing funds alone or housing funds and private funds. Subdivision (c)(4) does not include a project supported by a combination of housing funds and public funds in the form of low-interest loans, which are the circumstances in the present case.

We reject HPI's strained effort to argue that low-interest public loans are the equivalent of private funds because they could also qualify a project for an exemption under section 1720, subdivision (c)(6)(E). HPI cannot rely on another nonprecedential Director's determination, concluding that tax-exempt bonds and federal tax credits are private funds. (*Central Village Apartments, City of Los Angeles*, Public Works case No. 2006-005 (July 12, 2006).) In this instance, public loans are public funds, not private funds. Housing funds combined with low-interest public loans do not qualify for an exception from the prevailing wage law under section 1720, subdivision (c)(4).

2. *Section 1720, Subdivision (c)(6)(E)*

HPI also essays the argument that, if an affordable housing project receives any funding from low-interest loans it qualifies for an exception from the prevailing wage law, even when the project has other funding sources. Section 1720, subdivision (c)(6)(E) provides: "(6) Unless otherwise required by a public funding program, the construction or rehabilitation of privately owned residential projects is not subject to the requirements of this chapter if one or more of the following conditions are met: [¶] . . . [¶] (E) The public participation in the project that would otherwise meet the criteria of subdivision (b) is public funding in the form of below-market interest rate loans for a project in which occupancy of at least 40 percent of the units is restricted for at least 20 years, by deed or regulatory agreement, to individuals or families earning no more than 80 percent of the area median income."

It is undisputed the Vista Del Sol residential project satisfies the occupancy requirements for affordable housing. Additionally, Vista Del Sol is partly financed by public loans at below-market interest rates. On the other hand, the project is also partly financed by the Agency Loan. HPI argues that part financing is sufficient, especially because the Agency Loan is from a qualified redevelopment housing fund.

Although we understand the public policy appeal of HPI's position, it does not comport with the express language of the statute, which states nothing about a project being partly financed by public loans at below-market

interest rates in combination with other financing. Had that been the legislative intent, it could have been accomplished much more easily, without requiring the circuitous interpolations to arrive at the statute's meaning as suggested by HCI's analysis. The Legislature could have drafted section 1720, subdivision (c)(6)(E) similarly to subdivision (c)(4) so that an exemption from the prevailing wage law would apply to projects financed solely by low-interest public loans or by a combination of low-interest public loans and another kind of funding. The fact that the Legislature did not draft section 1720, subdivision (c)(6)(E) like subdivision (c)(4) "tips the scales." (*State Building & Construction Trades Council of California v. Duncan, supra,* 162 Cal.App.4th at p. 327.) This court may not alter the words of a statute to change its meaning. (*Community Development Com. v. County of Ventura* (2007) 152 Cal.App.4th 1470, 1482 [62 Cal.Rptr.3d 383].) The project did not qualify for an exemption under section 1720, subdivision (c)(6)(E).

## C. *Legislative History*

The parties engage in considerable debate about the applicability and meaning of the legislative history of the two subdivisions. HPI asserts the legislative history is essential to clarify the statute's ambiguities. Respondent counters there is "no need for the Court to resort to legislative history to understand or apply the (c)(4) and (c)(6)(E) exemptions, both of which are unambiguous and phrased in plain English."

We do not perceive an ambiguity is created, as proposed by HGI, because section 1720, subdivision (c)(4) uses the term "solely" and subdivision (c)(6)(E) does not. Nor do we find there to be ambiguity in the introductory phrase to section 1720, subdivision (c)(6): "Unless otherwise required by a public funding program, the construction or rehabilitation of privately owned residential projects is not subject to the requirements of this chapter if one or more of the following conditions are met . . . ." Instead, the two subdivisions are facially plain in their meaning, making it unnecessary to resort to legislative intent. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268–269 [121 Cal.Rptr.2d 203, 47 P.3d 1069].) For that reason, we do not disregard the legislative history but we do not find it necessary to resolve the appeal.

## D. *Public Policy*

■ HPI invokes public policy supporting affordable housing as another reason to read the two subdivisions together. By exempting certain narrow categories of affordable housing projects from the prevailing wage law, the Legislature has already balanced the public policy favoring the payment of

prevailing wages on public works projects against the public policy favoring the construction of affordable housing. In considering the adverse impact of extending the prevailing wage law, thereby reducing the willingness of developers to expand the stock of low-income housing, another court commented: "These are issues of high public policy. To choose between them, or to strike a balance between them, is the essential function of the Legislature, not a court. 'Our role is confined to ascertaining what the Legislature has actually done, not assaying whether sound policy might support a different rule.' [Citation.]" (*State Building & Construction Trades Council of California v. Duncan, supra*, 162 Cal.App.4th at p. 324.) Like the Director, we decline to usurp the Legislature's treatment of these competing interests.

### E. *Due Process*

In making a due process claim, HPI repeats its contention that the statutory exceptions are ambiguous, asserting that the Director's determination creates a legal framework that is vague and unintelligible because it concluded "that the three otherwise exempt funding sources cannot be combined together on a project without triggering the prevailing wage requirements." The trial court rejected the argument that the Determination rendered the exemptions so vague that HPI's due process rights had been violated, finding that the criteria enunciated in *Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364 [115 Cal.Rptr.3d 685] had been met: "Our due process analysis is guided by two principles. A statute will pass constitutional muster, ' "if it (1) gives fair notice of the practice to be avoided, and (2) provides reasonably adequate standards to guide enforcement. [Citations.]" [Citation.]' [Citation.] In applying these two principles, we respect ' "the strong presumption that legislative enactments 'must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.' " [Citation.]' [Citation.] Moreover, because the Ordinance regulates business behavior, constitutional requirements are more relaxed than they are for statutes that are penal in nature. [Citation.]" (*Garcia v. Four Points Sheraton LAX, supra*, 188 Cal.App.4th at p. 386, fn. omitted.)

The Determination employed a narrow interpretation of the section 1720, subdivision (c) exemptions, analyzed in the context of the project's unique factual setting. Public works coverage determinations are, in essence, advice letters to individual persons or entities about a specific project or type of work. The statutory exemptions at issue in this case are not rendered unconstitutionally vague by the mere fact that they required a fact-specific interpretation. The

Director's thorough analysis of the facts and reasonable interpretation of the law defeats HPI's due process challenge. (*Garcia v. Four Points Sheraton LAX, supra*, 188 Cal.App.4th at p. 387.) Read together, the statutory exemptions and the Director's determination provide fair notice to the public of the standards a project must meet for the exemptions to apply. The Director's reasonable application of the statute did not deprive HPI of its right to due process.

## V

## DISPOSITION

■ The subject project failed to qualify for the section 1720, subdivision (c)(4) exemption from the prevailing wage law because its public funding did not consist solely of redevelopment housing funds, as required by the unambiguous words of the statute. The project failed to qualify for the section 1720, subdivision (c)(6)(E) exemption because it relied on public funding other than low-interest public loans, which is not allowed under the unambiguous words of the statute. It is unnecessary to resort to legislative history to interpret the statute's plain meaning. Considerations of public policy and due process are not persuasive. As a result, the project is a public work and subject to the prevailing wage requirements of the Labor Code.

We affirm the judgment of the trial court denying HPI's petition for writ of mandate. The parties shall bear their own costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.