# IN THE SUPREME COURT OF CALIFORNIA

LEOPOLDO PENA MENDOZA et al.,
Plaintiffs and Appellants,

v.

FONSECA MCELROY GRINDING CO., INC., et al.,
Defendants and Respondents.

S253574

Ninth Circuit
17-15221

Northern District of California
3:15-cv-05143-WHO

August 16, 2021

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Kruger, Groban, and Jenkins concurred.

Justice Cuéllar filed a dissenting opinion, in which Justice Liu concurred.

MENDOZA v. FONSECA MCELROY GRINDING CO., INC.

S253574


Opinion of the Court by Corrigan, J.


California's Labor Code requires that certain kinds of jobs performed on a public works project be compensated at a per diem rate no less than the prevailing wage paid in the area where the work is done. (Lab. Code,[1] § 1771.) The Labor Code delineates with specificity the kinds of "public work" covered by the prevailing wage statutes. (See §§ 1720–1720.9.)

The question here is whether the prevailing wage must be paid for plaintiffs' mobilization work, which involved transporting heavy machinery to and from a public works site. It is undisputed that operation of the machinery at the site qualifies as "public work." However, plaintiffs do not contend that mobilization is "public work" as that term is defined in the applicable statutes. Instead, they argue that, under Labor Code section 1772, they are "deemed to be employed upon public work" because their mobilization work was performed "in the execution" of a public works contract. Plaintiffs urge an interpretation of section 1772 that would enlarge the scope of the prevailing wage law to encompass activities that the Legislature has not otherwise defined as public work.

This expansive interpretation is unsupported by either the statutory language or legislative history. Section 1772 was not intended to define or expand the categories of work covered by

_____

[1] Further unspecified section references are to the Labor Code.

1

the prevailing wage law.  As a result, plaintiffs' reliance on that statute is misplaced.[2]

## I.  BACKGROUND

Defendants are a roadwork construction company and its successor, which work on both public and private projects.  Part of the road construction process involves using milling equipment to break up existing roadbeds so that new roads can be built.  Plaintiffs are unionized engineers who operate the equipment.  Sometimes the heavy milling machines are not kept at the job site but are stored instead at a permanent yard or other offsite location.  In such cases, plaintiffs report to the offsite location, load the equipment onto trailers, and bring it to the job site.  This preparatory activity and equipment transportation is known as mobilization.[3]

A master agreement between defendants and plaintiffs' union established wage rates for onsite construction.  A separate memorandum of agreement (memorandum) set a lower wage rate for mobilization.  When assigned to public works projects, plaintiffs here were paid according to the master agreement and memorandum, receiving the prevailing wage for onsite work and the lesser memorandum rate for mobilization.

---

[2] To be clear, although we conclude that section 1772, standing alone, does not afford coverage for mobilization, we do not hold more broadly that mobilization necessarily falls outside the scope of the prevailing wage law's protections.  (See *post*, at pp. 33–34.)

[3] More specifically, mobilization entails:  loading the milling machines onto a trailer; securing the equipment; checking light, brake, and fluid levels of the truck transporting the trailer; driving to the construction site; and returning the truck and trailer to the storage yard.

Plaintiffs sued in federal court alleging, inter alia, failure to pay the prevailing wage for mobilization done in connection with public works projects. The parties filed cross-motions for partial summary judgment limited to whether mobilization fell under the prevailing wage law. The district court ruled for defendants, concluding that mobilization was not covered by prevailing wage protection.

After all remaining issues were settled, plaintiffs appealed the mobilization decision to the United States Court of Appeals for the Ninth Circuit. The sole issue raised was "whether transporting heavy equipment to be used on public works construction is [done] 'in the execution of the contract' under California Labor Code section 1772." We accepted the Ninth Circuit's request[4] to decide whether the mobilization activity was covered by section 1772.[5]

## II. DISCUSSION

### A. *Prevailing Wage Law Overview*

California's prevailing wage law was enacted in 1931 as an uncodified measure. (1931 Act; Stats. 1931, ch. 397, §§ 1–6, pp. 910–912.) Its federal counterpart, the Davis-Bacon Act (40 U.S.C. § 3141 et seq.), was enacted the same year but is not

---

[4] Cal. Rules of Court, rule 8.548(a).

[5] The Ninth Circuit framed the question as follows: "Is operating engineers' offsite 'mobilization work' — including the transportation to and from a public works site of roadwork grinding equipment — performed 'in the execution of [a] contract for public work,' [section 1772], such that it entitles workers to 'not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed' pursuant to section 1771 of the California Labor Code?"

completely coextensive with California's version of the law. (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 165 (*Kaanaana*).) State and federal prevailing wage laws "responded to the dire economic conditions of the Great Depression, when private construction diminished severely and 'the oversupply of labor was exploited by unscrupulous contractors to win government contracts . . . .' " (*Kaanaana*, at pp. 165–166; see *Universities Research Assn. v. Coutu* (1981) 450 U.S. 754, 773–774.)

The prevailing wage law is a minimum wage provision whose overall purpose is "to protect and benefit employees on public works projects." (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985 (*Lusardi*).) "This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Id.* at p. 987.) Courts liberally construe the law to fulfill its purpose. (*City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 949–950.)

Those employed on "public works" must generally be paid at least the "prevailing rate of per diem wages for work of a similar character" in the area. (§ 1771.) Under the current statutory scheme, the prevailing wage law does not apply to work done by a public agency with its own labor force. (*Ibid.*) As we will discuss at some length, this statutory exclusion for

government workers was not always in place. (See *post*, at pp. 10–20.)

A contractor or subcontractor that does not pay the prevailing wage rate on a public works project is liable for the deficiency and subject to a penalty. (§ 1775, subd. (a).) The statutory payment obligation is independent of any contractual requirement. (*Lusardi*, *supra*, 1 Cal.4th at pp. 981–982.) For that reason, the fact that the parties' memorandum provides lesser pay for mobilization does not settle the question here. If the statutory scheme requires payment of the prevailing wage for a particular type of labor, it is irrelevant that the parties may have agreed to a lesser amount.

The prevailing wage law describes with particularity the kind of "public works" that fall within its scope.[6] Since the law's adoption in 1931, it has encompassed certain "construction or repair work." (Stats. 1931, ch. 397, § 4, p. 912.) Over the years, the statutory definition of "public works" has been amended to clarify and expand the scope of the activities it embraces. As applicable here, section 1720, subdivision (a)(1) (hereafter section 1720(a)(1)) currently defines "public works" as "[c]onstruction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds . . . ."[7] Other provisions of section 1720,

---

[6] The prevailing wage law uses the plural term "public works" as well as the singular term "public work." (See §§ 1720, subd. (a)(1) & (2), 1770, 1771, 1772.) We use the terms interchangeably.

[7] Although plaintiffs apparently did mobilization work on both public and private construction projects, we are concerned here only with work done under contract paid for in whole or in part with public funds.

subdivision (a) not involved here provide additional definitions of "public works" in different contexts like street and sewer work (subd. (a)(3)), carpet laying (subd. (a)(4) & (5)), and tree removal (subd. (a)(8)). Still other definitions of "public works" are contained in additional statutes. (§§ 1720.2–1720.9.)

Plaintiffs' operation of milling machines at the job site clearly constitutes "public work" under section 1720(a)(1) because it involved "[c]onstruction, alteration, demolition, installation, or repair work," and all the labor engaged in here was "done under contract and paid for in whole or in part out of public funds . . . ." But here we are concerned with mobilization, not onsite machine operation. Plaintiffs do not argue that mobilization fits within one of the definitions of "public works" in the prevailing wage law. Instead, they rely on section 1772, which derives from a provision in the uncodified 1931 Act. (See Stats. 1931, ch. 397, § 1, p. 910.) That section currently reads: "Workers employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work." (§ 1772.) Plaintiffs claim their entitlement to the prevailing wage for offsite mobilization flows from this "deeming" provision.

This court has not previously interpreted section 1772. As discussed in more detail below, in recent decades a number of lower courts have concluded that section 1772 applies to tasks that are " ' "an integrated aspect of the 'flow' process of construction." ' " (*Williams v. SnSands Corp.* (2007) 156 Cal.App.4th 742, 753 (*Williams*); see *Sheet Metal Workers' Internat. Assn., Local 104 v. Duncan* (2014) 229 Cal.App.4th 192, 205–206 (*Sheet Metal*).) In effect, the framework adopted by these cases extends the coverage of the prevailing wage law to activities not statutorily defined as "public work," so long as

that labor is integrated into construction or other defined public work. Over the years that interpretation led to controversy as to just what it meant for labor to be integrated into "the 'flow' process of construction" (*Williams*, at p. 753) and so to qualify as part of the "execution of [a] contract for public work" (§ 1772). The federal district court applied the "integrated aspect" test (*Williams*, at p. 753) but sided with defendants, concluding that mobilization is independent of, rather than integrated into, the construction work performed by plaintiffs at the public works site.

Before considering the interpretation of section 1772 adopted in recent lower court cases, we examine the section's meaning anew, focusing first on its language and then on its legislative history.

B. *Section 1772*

Familiar principles guide our interpretation. Our fundamental task is to determine the legislative intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. We examine that language, not in isolation, but in the context of the statutory framework as a whole to discern its scope and to harmonize various parts of the enactment. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Ibid.*)

The operative language of section 1772 has remained largely unchanged since 1931, when it first appeared as part of the uncodified prevailing wage law.[8] (Stats. 1931, ch. 397, § 1, p. 910.) Considering section 1772 in the context of the overall development of the prevailing wage law, it appears its aim was quite modest: to ensure that the benefits of the prevailing wage law extend to those employed by contractors or subcontractors.

As noted, the obligation to pay prevailing wages does not now apply to work carried out by a governmental entity's own labor force. Before the adoption of a statute expressly setting forth this exclusion (§ 1771), there was a vigorous debate about whether the prevailing wage law as originally enacted applied to government workers, as we explain below. (See *post*, at pp. 16–18; see generally *Bishop v. City of San Jose* (1969) 1 Cal.3d 56 (*Bishop*).) One aim of the public works scheme was and is to protect laborers who are not part of a governmental labor force. (*Lusardi*, *supra*, 1 Cal.4th at p. 987.)

A governmental entity electing not to use its own labor force on a public works project could, conceivably, contract individually with outside workers to perform the required tasks. Alternatively, it could award a public works contract to a contractor or subcontractor that would use those it hired to do the work. It appears that section 1772 was enacted to ensure that nongovernmental laborers were entitled to the prevailing wage whether they worked under a contract directly with a government entity, or under an agreement with a contractor or subcontractor awarded a public works contract. That is to say, these nongovernmental workers are entitled to the prevailing

---

[8] See *post*, at pages 10 to 15.

wage notwithstanding their employment relationship with a private contractor. Even though their employment agreement was with a private entity, they were "deemed" to be employed upon public work if they were engaged in the private contractor's "execution of [a] contract for public work." (§ 1772.)

The obligation to *pay* prevailing wages to those employed on public works arises out of section 1771, which links the obligation to the *kind* of work done. Section 1772, in turn, clarifies that workers employed by contractors or subcontractors "are deemed to be employed upon public work," so long as they are employed by the contractor or subcontractor in "the execution of any contract for public work." Section 1774 further specifies that "[t]he contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract." Section 1772 describes a *category of persons* entitled to the prevailing wage based on the work they do, while section 1774 describes *who must pay* them the prevailing wage to which they are entitled.

The structure of the prevailing wage law tends to confirm this understanding. The scheme appears in division 2, part 7, chapter 1 of the Labor Code. Article 1 of the law, entitled "Scope and Operation," defines the extent of prevailing wage coverage. (§§ 1720–1743.) Article 2, entitled "Wages," addresses the wages to be paid to those performing work encompassed by the law's defined scope. (§§ 1770–1785.) Section 1772 is found in article 2.[9]

---

[9] These article enumerations and headings were included in the Legislature's 1930's codification of the Labor Code. (See Stats. 1937, ch. 90, pp. 241–243.)

In the case of the prevailing wage law, the subject of each article is consistent with its heading. Within article 1, sections 1720 to 1720.9 describe the *types of labor* to which the law applies.[10] In article 2, section 1772 focuses on the *types of workers* entitled to receive the prevailing wage when they perform work defined as "public work." As we have recently pointed out, however, the "protections afforded by the prevailing wage laws only extend to activities that qualify as public work." (*Kaanaana, supra,* 11 Cal.5th at p. 167.) Nothing in the plain language of section 1772 indicates it was intended to expand the categories of public work covered by the prevailing wage law.

C. *The Evolving Context of Section 1772 and Its Continuing Vitality*

Support for this interpretation is found in the legislative history of section 1772. As noted, California and the federal government enacted prevailing wage laws during the Great Depression, when contractors intent on winning government contracts were able to exploit the oversupply of labor. (See *Kaanaana, supra,* 11 Cal.5th at pp. 165–166.)

The current California scheme traces back to the 1931 Act. (Stats. 1931, ch. 397, § 1, p. 910.) Section 1 of that uncodified measure contained two sentences that roughly correspond to sections 1771 and 1772 in the current version of the prevailing wage law. Section 1 of the 1931 Act provided, in relevant part:

---

[10] An exception to this principle is found in section 1771 (of art. 2), which extends coverage to "contracts let for maintenance work." This exception to the general structure of the prevailing wage law was added many decades after the scheme was codified as part of the Labor Code. (Stats. 1974, ch. 1202, § 1, p. 2593.)

"Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed . . . shall be paid to all laborers, workmen and mechanics *employed by or on behalf of the State of California, or by or on behalf of any county, city and county, city, town, district or other political subdivision of the said state*, engaged in the construction of public works, exclusive of maintenance work. Laborers, workmen and mechanics *employed by contractors or subcontractors* in the execution of any contract or contracts for public works with the State of California, or any officer or public body thereof, [or any political subdivision], *shall be deemed to be employed upon public works*." (Stats. 1931, ch. 397, § 1, p. 910, italics added.)

The first sentence quoted above extended coverage to those "employed by or on behalf" of the government in constructing public works.[11] The second sentence "deemed to be

---

[11] It appears the reference to workers "employed by" the state and its political subdivisions signified direct employees of the government. While courts in two states have interpreted their prevailing wage laws to exclude direct governmental employees despite language applying the law to those employed "by or on behalf" of the government, they did so only because of specific constitutional concerns or because the provision was overridden by a more specific statute excluding governmental employees. (See *Bradley v. Casey* (Ill. 1953) 114 N.E.2d 681, 683; *State ex rel. Tucker v. Div. of Labor* (W.Va. 2008) 668 S.E.2d 217, 229.) The 1931 Act contained no provision excluding government workers from its scope. By contrast, a rudimentary prevailing wage law enacted in the 1890's expressly excluded from its wage protections "persons employed regularly in any of the public institutions" of the state or its subdivisions. (Stats. 1897, ch. 88, § 1, p. 90.) That law was repealed when the 1931 Act took effect. (See Stats. 1931, ch. 396, § 1, p. 909; Stats. 1931, ch. 397, § 1, p.

employed upon public works" those who work for contractors or subcontractors. The latter sentence, which is the predecessor of section 1772, appeared to clarify that prevailing wage protection extends not only to those employed directly by the government, as confirmed in the first sentence, but also to those who were employed by contractors or subcontractors.[12]

The statutory construction used in the 1931 Act parallels prevailing wage legislation in other states that extended the law to workers "employed by or on behalf" of public entities. Indeed, the statutory language at issue appears in state prevailing wage laws adopted before the federal Davis-Bacon Act was enacted. In an 1891 Kansas law applied to workers " 'employed by or on behalf' " of the state or its political subdivisions, the legislation clarified that " '*persons employed by contractors or subcontractors in the execution of any contract . . . shall be deemed to be employed by or on behalf of*' " the state or one of its political subdivisions for purposes of the law. (Johnson, *Prevailing Wage Legislation in the States* (Aug. 1961) 84:8 Monthly Lab. Rev. 839, 840, italics added.) The italicized provision, which could be found in other state prevailing wage

_____

910.) It is telling that the Legislature chose not to include a similar exclusion for government workers in the 1931 Act. It only took such action in 1974. (Stats. 1974, ch. 1202, § 1, p. 2593.)

[12] Although the reference in the first sentence to workers employed "on behalf of" governmental entities might be construed to extend to work done under contract, the import of that language could be subject to debate. (See *Division of Labor Stand. v. Friends of Zoo (*Mo. 2001) 38 S.W.3d 421, 422–424.) The second sentence left no doubt that the protections of the law extended to employees of private contractors engaged in public works.

laws, was interpreted by the Arizona Supreme Court to ensure that those employed by private contractors receive the benefit of wage guarantees provided to governmental workers by deeming them to be public employees for purposes of the law. (See *State v. Miser* (Ariz. 1937) 72 P.2d 408, 413.)

Some early state prevailing wage laws, like the 1931 Act, employed a slightly different formulation, clarifying that those " 'employed by contractors or subcontractors in the execution of any contract . . . for public works . . . shall be deemed to be employed *upon public works*.' " (*Logan City v. Industrial Commission of Utah* (Utah 1934) 38 P.2d 769, 770, italics added.) Whether the "deeming" conferred by different statutes was extended to government employment status, as in Kansas, or to the status of employment on a contract for public work, the apparent purpose was the same. Either formulation was designed to ensure that daily wage workers employed by private contractors on public works would receive the prevailing wage.

The language that is now incorporated in section 1772 has no counterpart in the federal Davis-Bacon Act. (See 40 U.S.C. §§ 3141–3148.) That is not surprising. The Davis-Bacon Act by its plain terms has never extended to governmental employees.[13] There was no need to clarify that workers

---

[13] As originally enacted, the Davis-Bacon Act required that "every contract" for certain public work include a provision specifying that the wages paid "by the contractor or subcontractor on the public buildings covered by the contract" shall be at least the prevailing rate. (Pub. L. No. 798 (Mar. 3, 1931) 46 Stat. 1494.) The federal statutory scheme thus only extended to contract work. (See also Pub. L. No. 402, § 2 (Aug. 30, 1935) 49 Stat. 1011, 1012.) The Davis-Bacon Act continues to apply exclusively to work performed by contractors or subcontractors. (See 40 U.S.C. § 3141(a) & (c).)

employed by private contractors received the benefits of the federal law because they were its *only* intended beneficiaries. But that was not the case in California, at least at the time of the 1931 Act. While California's prevailing wage law is said to share the purposes of the federal Davis-Bacon Act (*City of Long Beach v. Department of Industrial Relations*, *supra*, 34 Cal.4th at p. 954), the statutory language adopted in the 1931 Act bears a closer relation to state prevailing wage laws from that period.

When the prevailing wage law was codified in 1937, section 1 of the 1931 Act was split into two new sections, 1771 and 1772. (Stats. 1937, ch. 90, p. 243.) Section 1771 provided: "Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for legal holiday and overtime work shall be paid to all workmen employed on public works, exclusive of maintenance work." (*Ibid.*) Section 1772 provided: "Workmen employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work." (*Ibid.*)

Again, the original function of section 1772 appears to have been simply to ensure that those employed by a contractor or subcontractor were given the same protection as others, including those employed by the government itself. Prevailing wages were due "all workmen employed on public works" (former § 1771, added by Stats 1937, ch. 90, p. 243), with workmen employed by contractors or subcontractors "deemed to be employed upon public work" for the purposes of the statutory obligation to pay prevailing wages (former § 1772, added by Stats 1937, ch. 90, p. 243).

The 1937 codification of the prevailing wage law notably omitted the reference to those employed "by or on behalf" of the state or its political subdivisions. (Compare former § 1771, added by Stats. 1937, ch. 90, p. 243, with Stats. 1931, ch. 397, § 1, p. 910.) But there is little reason to believe the omission reflected a legislative intent to exclude governmental workers from the scope of the prevailing wage law.[14] Section 1771 as adopted in 1937 applied to *all* "workmen employed on public works," with no exclusion for direct governmental employees. (Former § 1771, added by Stats. 1937, ch. 90, p. 243.) The explicit exclusion of prevailing wage entitlement for government workers was not adopted by the Legislature for nearly 40 years. (Stats. 1974, ch. 1202, § 1, p. 2593.)

Because section 1772 has not been substantively amended since it became part of the Labor Code in 1937,[15] its essential function as to contract work should be no different than when it was originally enacted: If public work is performed in the execution of a contract, the fact a laborer is doing that work as an employee of a contractor or subcontractor does not eliminate entitlement to prevailing wages.

---

[14] The California Code Commission prepared a Proposed Labor Code in 1936 that recommended the codification of various labor statutes into a single Labor Code. Notably, the Proposed Labor Code contained no comment or annotation associated with proposed section 1771 that would indicate an intent to change the meaning or scope of the provision in the 1931 Act from which that statute was derived. (Cal. Code Com. Office, Proposed Labor Code (1936) p. 88.)

[15] The sole amendment to the text enacted in 1937 was to replace "[w]orkmen" with "[w]orkers." (Stats. 1992, ch. 1342, § 7, p. 6602.)

The principal counterargument to this original understanding of section 1772 is that, at least as of today, the statute might be considered surplusage. Decades after section 1772 was enacted, the companion statute, section 1771, was amended to directly specify that its protections extend only to work done under outside contract: "This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces." (Stats. 1974, ch. 1202, § 1, p. 2593.) Because section 1771 is now expressly limited to contract work, there is no longer any need to clarify that those employed by contractors or subcontractors are also entitled to prevailing wage protection.

Even if section 1772 might be considered surplusage now, that was not the case when it was first enacted. There is considerable historical support for this interpretation in addition to the legislative history. In the years after the codification of the Labor Code, the Attorney General on several occasions confirmed the understanding that, as originally enacted, section 1771 applied to a government's own employees. In 1944, the Attorney General was asked to opine about a public works project that had originally been put out to bid but that was to be completed with day laborers hired by and under the supervision of the county. The Attorney General concluded that, under section 1771, the county was obligated to pay prevailing wages for construction work performed by the day laborers hired directly by the county. (3 Ops.Cal.Atty.Gen 399, 401 (1944).)

Sixteen years later, the Attorney General again concluded that prevailing wage requirements applied to government employees. (35 Ops.Cal.Atty.Gen. 1 (1960).) Specifically, the Attorney General opined that prevailing wage requirements applied to employees of a flood control district while

16

constructing things like channels and dams. In addition, the prevailing wage law applied to county employees that constructed storm-water conduits, highway bridges, and buildings. (*Ibid.*) The Attorney General noted that former section 1720, subdivision (a) (now 1720(a)(1)), which applies to contract work, was not implicated. However, the work *was* covered under former subdivisions (b) and (c) of section 1720, which applied to work done for certain special districts and to street, sewer, or other improvement work done under the direction and supervision of the state or one of its political subdivisions.[16] (35 Ops.Cal.Atty.Gen., at p. 2.)

Consistent with the Attorney General's 1960 opinion, a 1961 survey of prevailing wage laws in the 50 states reported that California's prevailing wage law applied to specified governmental employees: those working on "irrigation, reclamation, street, and sewer projects." (Johnson, *Prevailing Wage Legislation in the States*, *supra*, 84:8 Monthly Lab. Rev. at p. 842, fn. 17.) California was identified as one of 14 states that, at the time, extended prevailing wage protection to government workers. (*Ibid.*) For at least three decades following its enactment, section 1771 could have been understood as covering certain governmental workers while section 1772 served the purpose of clarifying that employees of private contractors were likewise protected.

This court took a contrary view of section 1771's coverage in *Bishop*, *supra*, 1 Cal.3d 56. Interpreting that provision in light of sections 1720 and 1724, the court concluded "that section 1771 is by its own terms applicable only to work performed

---

[16] Former subdivisions (b) and (c) of section 1720 now appear, in substance, in subdivision (a)(2) and (3) of that same statute.

under contract, and is not applicable to work carried out by a public agency with its own forces." (*Bishop*, at p. 64.) Thereafter the Legislature codified this holding when it amended section 1771 in 1974. (*O.G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434, 459 (*Sansone*).)

*Bishop* was a closely contested 4–3 decision. The majority focused on provisions in the prevailing wage law emphasizing the law's application to contracted work, noting that "the entire tenor [of the law] discloses a legislative purpose to deal only with contracted public work, and not with work done by a municipality by force account." (*Bishop*, *supra*, 1 Cal.3d at p. 64.) It is true that the bidding process and the intricacies of private contracts can require specificity and provisions not involved when governmental entities use their own workers. The court also emphasized that the Legislature had not amended the prevailing wage law since a 1959 Court of Appeal decision concluded the " 'prevailing wage and competitive bidding statutes have no application to work undertaken by force account or day labor.' " (*Id.* at pp. 64–65, citing *Beckwith v. County of Stanislaus* (1959) 175 Cal.App.2d 40, 48.) But the statement in the 1959 decision was dicta and unsupported by any analysis or citation to legal authority. (*Beckwith*, at p. 48.) Indeed, the case did not concern the application of the prevailing wage law or cite a single provision in that scheme. (*Bishop*, at p. 72 (dis. opn. of Peters, J.).) Further, the Legislature's subsequent inaction, assuming it was even aware of the passing reference to the prevailing wage law in the 1959 decision, has no bearing upon the legislative intent at the time section 1771 was enacted decades earlier.

The lengthy dissent in *Bishop* pointed out, among other things, that the majority's interpretation largely ignored other

subdivisions of section 1720 defining "public works" to include activities not performed under contract, including work performed by special governmental districts as well as street and sewer work. (*Bishop*, *supra*, 1 Cal.3d at p. 70 (dis. opn. of Peters, J.).) The majority also failed to consider the legislative history of section 1771 and its interplay with section 1772.

The incomplete analysis in *Bishop* led to an erroneous interpretation of section 1771, and for that reason *Bishop v. City of San Jose*, *supra*, 1 Cal.3d 56 is overruled to the extent it is inconsistent with our conclusion that section 1771 as originally enacted applied to direct governmental employees. Because *Bishop* was superseded by statute when section 1771 was amended to exclude government employees, the overruling of the *Bishop* majority's section 1771 analysis has no practical effect. Government employees are now expressly excluded from the scope of the prevailing wage law. (§ 1771.) However, our rejection of *Bishop* does confirm that section 1772 as we have interpreted it served an important purpose at its inception, when the prevailing wage law extended to those employed directly by the government. The statute was not surplusage at the time of its enactment.

Even if *Bishop* were correctly decided and section 1771 did not apply to government workers at the time of its enactment, section 1772 would still have served a valuable purpose, if only to clarify the application of the law. It could certainly have been argued that employees of subcontractors engaged in public work came within the prevailing wage law. But section 1772 removed any doubt and continues to do so. A contractor cannot avoid the prevailing wage obligation by parsing out tasks to subcontractors. Further, section 1772 has been interpreted to extend prevailing wage entitlement to workers whose services

are used by a main contractor or subcontractor even when there is no formal employment relationship. As the Public Works Manual prepared by the Office of the Labor Commissioner suggests, section 1772 extends protection to workers "whose services are 'utilized' in furtherance of the business of another, notwithstanding the technical absence of an employer-employee relationship, or a person 'engaged in' a task for another under contract, or orders to do it." (Dep. of Industrial Relations, Div. of Labor Standards Enforcement, Public Works Manual (May 2018) § 2.2, p. 3.) Thus, section 1772 continues to serve an important purpose in defining the types of workers entitled to the law's protection.

D. *Plaintiffs' Focus on "Execution" and "Deemed"*

Plaintiffs' attempt to expand the scope of the prevailing wage law beyond the definition of "public works" largely rests on the meaning of the terms "execution" and "deemed" in section 1772.

Plaintiffs first point to the term "execution" in section 1772, as used in the phrase "in the execution of any contract for public work." They claim the term broadly means "carrying out and completion of all provisions of the contract, regardless [of] whether that work would constitute a public work[] if it were viewed independently." (See *Williams*, *supra*, 156 Cal.App.4th at p. 750.) This interpretation would bring within the scope of the prevailing wage law any activity required to fulfill a public works contract, even if the work did not qualify as a defined "public work."

This expansive role for the phrase "in the execution of" is inconsistent with the Legislature's approach to defining what is encompassed by that term. When the Legislature has expanded

20

the reach of the law, it has done so by changing the definitions of "public works" in article 1.  (See generally §§ 1720–1720.9.) These amendments reflect a deliberate and specific intent to delineate and parse out what kind of labor constitutes "public works."  Over the decades the Legislature has revisited and refined the scope of public works definitions.   For example, the Legislature has taken care to specify that "public works" means certain hauling of refuse to an outside location, but not if the refuse consists of recyclable materials that are separated and sold.  (§ 1720.3.)  As another example, the hauling and delivery of ready-mixed concrete to fulfill a public works contract constitutes a "public work," but this same provision does not extend to the hauling and delivery of asphalt.  (§ 1720.9, subd. (a).)

Plaintiff's proposed interpretation would render these distinctions meaningless if section 1772 extends the prevailing wage law to *any* work required to fulfill a public works contract. There is little reason to believe the Legislature would take great pains to specify what constitutes "public works" in article 1 while broadening the scope of coverage through section 1772 to encompass activities not expressly falling within those carefully crafted definitions. Plaintiffs provide no limiting principle to their proposed expansion.   Nor does the plain language of section 1772 furnish any limitation on plaintiffs' proposed understanding.

A more reasonable interpretation of "in the execution of" is that it simply clarifies which workers are entitled to the prevailing wage when employed by contractors.  *All* workers are not universally so entitled.  Laborers receive the benefits of the law if they are employed to carry out public works.  The qualifier "in the execution of [a] contract for public work" in section 1772

establishes that limitation.  The effect of plaintiff's proposal runs contrary to legislative intent.  The Legislature has taken great care over decades to precisely categorize, in article 1, just what kinds of labor constitute public works.  Yet plaintiffs' approach would throw aside that careful drafting by allowing a different result under an interpretation of an imprecise statute that has gone largely unchanged for over 90 years.  If the Legislature so intends, it is, of course, empowered to take that action.  We will not divine such an intention on its behalf.

Plaintiffs also focus on the use of the word "deemed."  They argue that even if work being performed under contract is not "public work" when considered in isolation, it could still be "deemed" a public work if the terms of section 1772 are satisfied.  In effect, they would expand the scope of the prevailing wage law by "deeming" as "public work" an activity the Legislature has not so designated.

This approach misconceives the role that "deemed" plays in section 1772.  As used in the statute, "deemed" modifies the *types of workers* entitled to the prevailing wage, not the *types of labor* those workers perform.  The statute is not structured to say that *work* done "in the execution of any contract for public work [is] deemed to be . . . public work."  Instead, it is the *workers* who are "deemed to be employed upon public work." (§ 1772.)  Section 1772 focuses on which workers are entitled to the prevailing wage, not upon the types of work that qualify for coverage.

Further, interpreting "deemed" in the sense urged by plaintiffs would assign undue importance to opaque language that does not otherwise signal an intent to expand the law's scope.  If the Legislature had intended to expand the scope of

the prevailing wage law to capture work that does not fit within the provisions defining "public works," it is unlikely it would have used such a subtle approach to achieve that end. " 'The Legislature "does not, one might say, hide elephants in mouseholes." ' " (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1171.)

### E. *Judicial and Administrative Decisions*

#### 1. *Court of Appeal Cases*

While this court has not previously interpreted section 1772, the provision has been the subject of several lower court opinions. None of these decisions provides a persuasive reason to depart from the interpretation outlined here. For the reasons explained below, we disapprove those decisions in whole or in part.

No California case meaningfully touched upon section 1772 for decades after its enactment. The first case arguably to do so was *Sansone, supra,* 55 Cal.App.3d 434, in 1976. There, the court considered whether truck drivers who delivered materials used in building roads were entitled to the prevailing wage. The court quoted sections 1772 and 1774 but otherwise included no analysis or discussion of those statutes. (*Sansone,* at p. 441.) The issue as framed was whether the trucking *companies* that employed the drivers were subcontractors within the meaning of the prevailing wage law. (*Ibid.*)

Finding no California cases discussing who qualifies as a subcontractor under the prevailing wage law, the court turned to the federal Davis-Bacon Act (40 U.S.C. § 3141 et seq.). (*Sansone, supra,* 55 Cal.App.3d at p. 442.) Under the federal scheme, a supplier of standard building materials, referred to as a "bona fide" materialman or material supplier, is not

considered a subcontractor. A bona fide material supplier is therefore exempt from the obligation to pay its employees, including truck drivers, the prevailing wage. For the Davis-Bacon Act exemption to apply, the supplier must sell goods to the general public, the location from which the supplies are obtained may not be established specifically for the particular public works project, and the supply location cannot be situated on the public works site. (*Ibid.*)

*Sansone* held the trucking companies qualified as subcontractors who used their employees to fulfill a public works contract and, thus, were obligated to pay prevailing wages. (*Sansone*, *supra*, 55 Cal.App.3d at p. 445.) Two key factors distinguished the companies from those material suppliers exempt from federal prevailing wage requirements. First, the roadbuilding materials were obtained from a location adjacent to the project site and established specifically to serve that site. (*Id.* at pp. 443–444.) Second, the trucking companies were carrying out a term of the prime contract, which required the prime contractor to furnish the materials. (*Ibid.*)

In reaching its decision, the *Sansone* court also looked to *Green v. Jones* (Wis. 1964) 128 N.W.2d 551 (*Green*), a decision of the Wisconsin Supreme Court interpreting that state's prevailing wage law. (*Sansone*, *supra*, 55 Cal.App.3d at p. 443.) The Wisconsin decision contrasted hauling from a commercial location operating continuously, which would not be covered, with hauling from a location set up solely to serve the project, which would be covered. (*Id.* at p. 444.) But the Wisconsin court went further, stating that regardless of the source of the materials, the drivers would be covered if the materials were immediately utilized on the improvement. (*Ibid.*) In assessing coverage, it considered whether " '[t]he drivers' tasks were

*functionally related to the process of construction'"* and the
" 'delivery of materials was an *integrated aspect of the "flow"*
*process of construction.'"* (*Ibid.*, citing *Green*, at p. 563, italics
added.) While *Sansone* ostensibly focused on whether the
*trucking companies* were subcontractors rather than material
suppliers, its approach has served to influence California's
section 1772 jurisprudence. That influence was due in part to
*Sansone's* citation to *Green* and its embrace of the notion that
work integrated into the construction process is covered under
the prevailing wage law. (See *Williams*, *supra*, 156 Cal.App.4th
at pp. 752–754; *Sheet Metal*, *supra*, 229 Cal.App.4th at pp. 205–
206.)

The next California case to address section 1772 was
*Williams*, *supra*, 156 Cal.App.4th 742, which like *Sansone*
involved truckers hauling materials. In *Williams*, truckers
*removed* unused construction materials like excess rock and
sand from construction sites. (*Williams*, at pp. 746–747.) The
*Williams* court characterized the legal question as whether the
truckers removing the construction materials were employed
" 'in the execution' " of the contract under section 1772.
(*Williams*, at p. 749.) The court concluded the truckers were
not entitled to the prevailing wage under that statute. (*Id.* at
p. 753.)

*Williams* began the analysis by focusing on the definition
of "execution" within section 1772, concluding that the term
"plainly means the carrying out and completion of all provisions
of the contract." (*Williams*, *supra*, 156 Cal.App.4th at p. 750.)
Then, while acknowledging that *Sansone* concerned who is or is
not a subcontractor under the prevailing wage law, *Williams*
turned to that case to "inform[] [the] assessment of the intended
reach" of the law to workers employed " 'in the execution' " of a

public works contract. (*Ibid*.) Relying on *Sansone* and *Green*, *Williams* emphasized a task's functional relationship to the process of construction and whether a task was " 'an integrated aspect of the "flow" process of construction.' " (*Id*. at p. 751, citing *Green*, *supra*, 128 N.W.2d at p. 563.) In assessing coverage, *Williams* considered whether a task was required to carry out a term of the public works contract, whether the work was performed at the project site or a site "integrally connected" to the project site, and whether work performed off the actual construction site was necessary to fulfill the contract. (*Williams*, at p. 752.)

There was no evidence of a functional relationship between the actual construction and the subsequent removal of unused materials. Accordingly, *Williams* held the removal work was "unrelated to the performance of the prime public works contract . . . ." (*Williams*, *supra*, 156 Cal.App.4th at p. 753.) It was "no more an integral part of the process of the public works project than the delivery of generic materials to the public works site by a bona fide material supplier." (*Ibid*.) According to the *Williams* court, "there was no evidence from which a determination could be made that the off-hauling was 'an integrated aspect of the "flow" process' [citation] of the project."[17] (*Williams*, at p. 754.)

_____

[17] After *Williams* the Legislature amended the definition of "hauling of refuse," a covered public work under section 1720.3, to clarify that the term "includes, but is not limited to, hauling soil, sand, gravel, rocks, concrete, asphalt, excavation materials, and construction debris." (§ 1720.3, subd. (b), as amended by Stats. 2011, ch. 676, § 1.) Consistent with our analysis here, it did so by amending the relevant section in article 1.

The only other California case to consider the meaning of section 1772 is *Sheet Metal*, 229 Cal.App.4th 192, which concerned coverage for offsite fabrication. In *Sheet Metal,* a community college entered into a public works contract to upgrade its facilities, including the update of a heating and cooling system. A firm that made a variety of ductwork and other sheet metal components at its permanent offsite facility subcontracted to make, and then install, its components into the college system. (*Id.* at p. 196.) The issue was whether the firm's workers who made the ductwork offsite were entitled to the prevailing wage. The court concluded there was no such entitlement. It reasoned "the work was not done 'in the execution' of the contract within the meaning of section 1772." (*Id.* at p. 214.) It observed that the offsite facility's location and existence were wholly unrelated to the particular public works project. (*Ibid.*)

*Sheet Metal* built upon the foundation deduced from *Sansone* and *Williams*, which emphasized that the critical factor in assessing coverage under section 1772 is "whether it is integrated into the flow process of construction." (*Sheet Metal*, *supra*, 229 Cal.App.4th at p. 206.) The decision also relied to a significant extent on a federal regulation defining the "site of the work" for purposes of the Davis-Bacon Act to exclude " 'permanent . . . fabrication plants . . . of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project.' " (*Sheet Metal*, at p. 210, citing 29 C.F.R. § 5.2(*l*)(3) (2014).)

These three cases are the only published California opinions that have purported to interpret section 1772 since its enactment. Plaintiffs urge they should be disregarded because

27

they apply a standard derived from the federal Davis-Bacon Act's limitation on coverage to persons "employed directly on the site of the work."[18] (40 U.S.C. § 3142(c)(1).) According to plaintiffs, California's prevailing wage law includes no such geographical limitation on coverage. They argue that even if there was a valid reason for applying principles derived from federal law to hauling and offsite fabrication, those principles should not be used more generally to define the scope of section 1772.

It is unnecessary to consider the geographical scope of the prevailing wage law to assess the validity of the approach taken in *Sansone*, *Williams*, and *Sheet Metal*.[19] Those cases primarily involved whether a company *is a subcontractor* within the meaning of the prevailing wage law. While the factors they employed may be valid to resolve that narrow question, they are not necessarily useful to resolve whether an activity is performed "in the execution" of a public works contract under section 1772. The reliance on their approach for this different purpose has led to an interpretation of section 1772 that expands its application to tasks that might not otherwise qualify as public works, simply because they have some functional relationship or integration with public work. That expansion is not supported by the language or legislative history of section

---

[18] Aside from federal authority, *Sansone* also relied upon the Wisconsin Supreme Court decision in *Green*, *supra*, 128 N.W.2d 1. (*Sansone*, *supra*, 55 Cal.App.3d at pp. 443–444.) Like the federal Davis-Bacon Act, Wisconsin limited its coverage to " 'work on the site.' " (*Green*, at p. 6.)

[19] We express no view concerning whether California's prevailing wage law places a geographic limitation on coverage in relation to the public works site.

1772.  It instead originates from the federal Davis-Bacon Act, which contains no statutory language analogous to section 1772.

Further, the approach in *Sansone*, *Williams*, and *Sheet Metal* causes coverage to turn on factors other than an activity's definition as a public work.  To the extent coverage is premised upon whether an activity is integrated into the flow process of construction, the approach ignores the carefully crafted definitions of public work contained in the prevailing wage law.  Moreover, it is not entirely clear what it means for an activity to be "integrated" into construction or other defined public work.

To the extent it might be argued the Legislature has acquiesced in the existing construction of section 1772 by failing to amend or clarify its provisions, the argument is not persuasive.  "In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry.  '[L]egislative inaction is " 'a weak reed upon which to lean' " . . . .' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156; accord, *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 723.)  Since *Sansone* was decided, the Legislature has actively defined and modified the definitions of "public works." (See, e.g., Stats. 2000, ch. 881, § 1, p. 6517; Stats. 2001, ch. 938, § 2, p. 7509; Stats. 2012, ch. 810, § 1; Stats. 2015, ch. 739, § 1.)  These actions are not consistent with an interpretation of section 1772 that would expand the scope of the prevailing wage law as plaintiffs urge.

The prevailing wage law as written and amended does not support an interpretation of section 1772 that expands the law's scope beyond defined "public works."  To the extent *O.G. Sansone Co. v. Department of Transportation, supra*, 55

Cal.App.3d 434, *Williams v. SnSands Corp.*, *supra*, 156 Cal.App.4th 742, and *Sheet Metal Workers' Internat. Assn., Local 104 v. Duncan, supra*, 229 Cal.App.4th 192, suggest to the contrary or are otherwise inconsistent with this opinion, they are disapproved.[20]

In his dissent in *Busker v. Wabtec Corp.* (Aug. 16, 2021, S251135) ___ Cal.5th ___ (dis. opn. of Cuéllar, J.) (*Busker*), Justice Cuéllar argues that the majority "overturns decades of legal decisions that had established a persuasive, workable framework for interpreting and applying" section 1772.[21] (*Busker*, at ___ [p. 3] (dis. opn. of Cuéllar, J.).)  However, it is precisely because the existing "framework" is so unclear that the Ninth Circuit asked this court to address the application of section 1772 in two separate cases. (See *ante*, at p. 3; *Busker*, at ___ [p. 26].)  The interpretation we adopt turns on careful consideration of the text of section 1772 and its history, not upon concerns about whether the current interpretation is difficult to administer.  In any event, the existing framework could hardly be described as workable.

---

[20] We express no view as to whether *Sansone* and its progeny have continued vitality in assessing whether an employer is a subcontractor (as opposed to bona fide material supplier) within the meaning of the prevailing wage law.

[21] The dissent has chosen to set forth the bulk of its section 1772 analysis and critique of the majority's approach in a separate opinion filed in *Busker*, a decision filed concurrently with this opinion. (See dis. opn. of Cuéllar, J., *post*, at p. 2; *Busker*, *supra*, ___ Cal.5th at ___ [p. 27, fn. 17].)  The reader is directed to Justice Cuéllar's dissent in *Busker* for a more complete explanation of the dissent's approach to interpreting section 1772 and its response to the majority's analysis here. (*Busker*, at ___ [pp. 1–24] (dis. opn. of Cuéllar, J.).)

The difficulty in applying the approach taken in *Sansone* and its progeny is exemplified by the three "factors" the dissent identifies as relevant to assessing "whether labor is done in 'the execution of [a] contract for public work' under section 1772 . . . ." (Dis. opn. of Cuéllar, J., *post*, at p. 2.) The factors include "whether the labor is (1) functionally related to the construction process; (2) integrated into that process; and (3) done to fulfill the prime contractor's obligation to complete a public works aspect of the project." (*Id.* at pp. 2–3, fn. omitted.) These factors are not "longstanding," as Justice Cuéllar's *Busker* dissent suggests (*Busker*, *supra*, ___ Cal.5th at ___ [p. 12] (dis. opn. of Cuéllar, J.)), but instead are derived from a hodgepodge of considerations found in *Sansone*, *Williams*, and *Sheet Metal*. Moreover, despite the emphasis in Justice Cuéllar's *Busker* dissent on the importance of the terms "execution" and "deemed" in section 1772 (see *Busker*, at ___ [pp. 3–4] (dis. opn. of Cuéllar, J.)), the three-part test does not even mention them. Instead, the test relies on broad and undefined terms not found in the statute: "functionally related," "construction process," "integrated," and "public works aspect of the project." (*Id.* at ___ [pp. 10–11] (dis. opn. of Cuéllar, J.).)

Justice Cuéllar's *Busker* dissent acknowledges that some "judgment" will be required "to discern whether a particular type of labor has a functional or integrated relationship with contracted-for public work." (*Busker*, *supra*, ___ Cal.5th at ___ [p. 14] (dis. opn. of Cuéllar, J.).) However, the shifting characterization of how section 1772 is to be applied points to the extreme difficulty in exercising that judgment. At one point, Justice Cuéllar's *Busker* dissent refers to "[w]ork *critically related*" to the execution of a public works contract. (*Busker*, at ___ [p. 2] (dis. opn. of Cuéllar, J.), italics added.) Elsewhere, it

31

refers to "labor that is not unduly attenuated from the actual construction work or other defined public work, and instead bears a *logical connection* to the preconstruction, construction, or postconstruction process." (*Id.* at ___ [p. 11] (dis. opn. of Cuéllar, J.), italics added.) At another point, it describes "tasks *vital* to the performance and completion of covered 'public work' . . . ." (*Id.* at ___ [p. 24] (dis. opn. of Cuéllar, J.), italics added.) Finally, it describes section 1772 as covering "labor performed *in preparation for, in furtherance of, or otherwise bearing a critical relationship to* defined public work and the public works project as a whole . . . ." (*Id.* at ___ [p. 24] (dis. opn. of Cuéllar, J.), italics added.) The differing and expansive terms used to describe the application of section 1772 illustrate the inherent difficulty in applying the test laid out in the dissent. It is simply not the case that the majority approach rejects a persuasive or workable framework for interpreting and applying section 1772.

### 2. *Administrative Decisions*

In addition to case law interpreting section 1772, administrative decisions of the Department of Industrial Relations (Department) have also applied the statute. Amicus curiae Division of Labor Standards Enforcement cites several coverage decisions from the 1980's and 1990's interpreting section 1772 to apply to mobilization. These decisions do not have a precedential effect. (See *Kaanaana, supra,* 11 Cal.5th at p. 179.) Further, the Department has no comparative advantage over the courts in deciding an issue of pure statutory interpretation. (*Kaanaana,* at p. 179; *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 236.) Nevertheless, while "ultimate responsibility for statutory interpretation rests with the courts, an agency's interpretation

'is "one among several tools available to the court" when judging the [statute's] meaning and legal effect.' " (*Id.* at p. 178.)

In his *Busker* dissent, Justice Cuéllar argues that the Department's decisions deserve "serious consideration and offer further insight into what the statute means." (*Busker*, *supra*, ___ Cal.5th at ___ [p. 7] (dis. opn. of Cuéllar, J.).) He acknowledges the decisions have "dutifully applied the approach in *Sansone*, *Williams*, and *Sheet Metal* for effectuating section 1772." (*Busker*, at ___ [p. 13] (dis. opn. of Cuéllar, J.).) But that is precisely why they add nothing to the analysis. An administrative interpretation that is clearly erroneous, even if long-standing and consistent, is entitled to no deference. (See *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1012.) Because the decisions apply the same approach to section 1772 as *Sansone* and its progeny, they offer no valid reason to extend coverage to mobilization under that statute.

F.   *Application to Mobilization*

In light of our interpretation of section 1772, the answer to the Ninth Circuit's certified question is simple. That statute does not expand coverage to labor not otherwise defined as public work. Unless mobilization qualifies as public work, an employer has no obligation to pay the prevailing wage to those who perform it. Section 1772 cannot independently serve as the basis for concluding that the prevailing wage must be paid for mobilization.

This conclusion does not rule out the possibility that prevailing wages must be paid for mobilization work under some

other theory.[22]  But that issue is not before us.  The Ninth Circuit's question is limited to whether mobilization is covered under section 1772.

While this court may restate the certified question (Cal. Rules of Court, rule 8.548(f)(5)), we lack the power to reshape the federal litigation that gave rise to the question in the first instance.  When we decide a question of California law posed by another court, we are limited to an issue that "could determine the outcome of a matter pending in the requesting court."  (Cal. Rules of Court, rule 8.548(a)(1).)  The broader issue of whether plaintiffs are entitled to be paid the prevailing wage under any conceivable theory is beyond the scope of the pending federal litigation.  The sole issue presented on appeal to the Ninth Circuit was whether section 1772 afforded coverage for mobilization.  A decision concerning whether mobilization qualifies as "construction" or other defined "public work" would not only consider a defense to the partial summary judgment motion not raised by the plaintiffs, but it would also not address the narrow legal issue before the Ninth Circuit.

Plaintiffs did raise the issue of whether transportation of equipment to the work site should be treated as "travel time," which, they claim, must be compensated at the prevailing wage.

---

[22] As used in the prevailing wage law, for example, the term " 'construction' "  includes  "preconstruction"  and "postconstruction" phases of construction work. (§ 1720(a)(1); cf. *Priest v Housing Authority of City of Oxnard* (1969) 275 Cal.App.2d 751, 756.)  In addition, section 1720, subdivision (a)(3) defines  " 'public works' "  to include  "[s]treet . . . improvement work."   We express no view as to whether mobilization qualifies as construction, street improvement work, or any other category of " 'public works' " defined in section 1720 et seq.

To the extent their contention is premised upon the application of section 1772, the argument fails for the reasons articulated above. If travel time does not fall under a definition of public work, section 1772 does not independently provide a basis for coverage. Insofar as there may be some other statutory basis for compensating travel time at the prevailing rate, that issue is beyond the scope of the question certified by the Ninth Circuit.

Justice Cuéllar's dissents here and in *Busker* argue in quite forceful terms that a different approach to the understanding of "public works" is called for. They set out what our colleagues urge would be a better interpretation of the statutory language, and they reject the notion that coverage is limited to defined "public works." They fail to acknowledge, however, that this is a legislative function. The Legislature may of course choose, or decline, to modify the definitions of "public works" it has chosen over the decades. That is a policy choice to be considered by the Legislature after input from all interested parties and the exercise of its own judgment as to how best serve the sometimes competing goals it seeks to achieve.

In our view, it is not the role of the judiciary to usurp that legislative prerogative. Reading existing legislative enactments with care is not "pernicious" or merely an exercise in "judicial modesty." (*Busker*, *supra*, ___ Cal.5th at ___ [pp. 2, 3] (dis. opn. of Cuéllar, J.).) Instead, it is an approach, firmly established in our jurisprudence, that honors the important safeguards served by the separation of powers. "[C]onstru[ing] the law liberally" is a different enterprise from rewriting the law to have it read as we think best. (*Busker*, at ___ [p. 2] (dis. opn. of Cuéllar, J.).)

We emphasize two points, lest there be any confusion. First, the prevailing wage law covers what the Legislature says

it covers.  Second, our holding is narrow.  We merely address the question posed by the parties and the Ninth Circuit:  whether section 1772, standing alone, expands the scope of the term "public works" to embrace labor that is not covered by the definitions enacted as part of section 1720 et seq.  Nothing we say here should be read to condone any attempt to ignore the protections or obligations of the prevailing wage law.

## III.  CONCLUSION

We answer the Ninth Circuit's question as follows.  Section 1772 does not expand the categories of public work that trigger the obligation to pay at least the prevailing wage under section 1771.  Here there is no contention that mobilization qualifies as defined "public work."  Under the circumstances, section 1772 does not provide a basis for requiring plaintiffs to be paid the prevailing wage for that work.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

MENDOZA v. FONSECA MᴄELROY GRINDING CO., INC.

S253574

Dissenting Opinion by Justice Cuéllar

Plaintiffs (Leopoldo Pena Mendoza, Elviz Sanchez, and Jose Armando Cortes) worked as engineers for a public works roadway construction project.  They operated heavy milling machines to break up the existing roadbeds so that new roads could be built.  (Maj. opn., *ante*, at p. 2.)  This was unquestionably " 'public works' " labor under Labor Code section 1720, subdivision (a)(1),[1] as it clearly involved "[c]onstruction, alteration, demolition, installation, or repair work . . . ." (§ 1720, subd. (a)(1).)  The majority agrees.  (Maj. opn., *ante*, at p. 6.)

Plaintiffs also had to engage in "mobilization" work:  transporting the milling machinery to and from offsite storage locations and preparing it for use.  (Maj. opn., *ante*, at p. 2 & fn. 3.)  There was little prospect that plaintiffs could complete the construction work they were hired to do without mobilizing the machines used to repave the roadways.  The majority nonetheless rejects plaintiffs' argument that mobilization labor qualifies for prevailing wage coverage under section 1772, which provides that "[w]orkers employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work." (§ 1772.)  By its account, section 1772 in no way relates to the

_____

[1]     Further unspecified section references are to the Labor Code.

1

scope of work covered, and instead simply ensures coverage for contract workers engaged in defined public works activities. (See, e.g., maj. opn., *ante*, at pp. 1–2, 8–10, 14, 21–22.)

That's a conclusion I cannot embrace. I respectfully dissent for the same reasons explained more fully in my separate dissenting opinion in the other prevailing wage case we also decide today, *Busker v. Wabtec Corp.* (Aug. 16, 2021, S251135) __ Cal.5th __ (*Busker*).

Because of the prevailing wage law's critical function in protecting workers employed on public works, we must interpret the law liberally. (*City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 949–950.) For several decades, the Courts of Appeal and Department of Industrial Relations (DIR) have fulfilled their obligation in construing section 1772 by interpreting it to cover certain work critically related to the "execution of" (*ibid.*) a public works contract. (See, e.g., *O.G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434, 443–444 (*Sansone*); *Williams v. SnSands Corp.* (2007) 156 Cal.App.4th 742, 752–753; *Sheet Metal Workers' Internat. Assn., Local 104 v. Duncan* (2014) 229 Cal.App.4th 192, 205–206, 211–214 (*Sheet Metal*).) These cases provide us with three factors that help determine whether labor is done in "the execution of [a] contract for public work" under section 1772: whether the labor is (1) functionally related to the construction process; (2) integrated into that

process; and (3) done to fulfill the prime contractor's obligation to complete a public works aspect of the project.[2]

The majority nonetheless breaks with this established authority without justification. It glosses over section 1772's language *deeming* workers engaged in the "execution of" a public works contract — i.e., working to carry out and complete the construction or other related tasks for the project — to be employed on "public work." (§ 1772.) It papers over this language, and in the process disapproves of long-standing authority providing a workable framework for applying it, on the basis of an implausible reading of the section's exceedingly spare legislative history. And its interpretation undermines the prevailing wage law's purposes; among other things, it encourages public works employers to segment out labor not defined as "public works," but nonetheless constituting labor as crucial as it is integral to public works projects, so that they can pay lesser wages.

I add two brief observations to my *Busker* dissent (*Busker*, *supra*, __ Cal.5th at p. __ [pp. 1–24] (dis. opn. of Cuéllar, J.)), underscoring how the majority's interpretation errs as it specifically relates to mobilization work. First, mobilization naturally merits prevailing wage coverage based on its critical relationship with covered public work. The three factors from the *Sansone* line of cases reinforce this conclusion. The mobilization at issue here was functionally related to and

---

[2] Although the *Sansone* line of cases refers to the "construction" process (see, e.g., *Sansone*, *supra*, 55 Cal.App.3d at p. 444), its principles would apply to any other type of activity that qualifies as "public work." I therefore use "construction" here as an umbrella term for all the kinds of labor defined by the statute as public work.

integrated into the covered milling work and the project as a whole because the road construction as contracted for could not occur unless the machines arrived promptly, worked properly, and were removed when they served their purpose. Moreover, plaintiffs had to engage in mobilization to fulfill the prime contractor's contractual obligation to build new roads. The contractor owned the milling machines and elected to store them offsite. It directed its own employees to prepare and transport them so those employees could then use the machines as part of the road construction called for by the contract.

In other words, the mobilization of specialized construction equipment by the skilled workers who would use them at the jobsite was sufficiently connected with the execution of a public construction project to be deemed public work under section 1772. (Cf. *Allied Concrete & Supply Co. v. Baker* (9th Cir. 2018) 904 F.3d 1053, 1061 [explaining how prevailing wage coverage for ready-mix concrete drivers, as opposed to drivers supplying standard building materials, makes sense because the former "are more integrated into the construction process" and "are more skilled than other drivers and provide a material that is more important to public works projects than other materials such that paying the prevailing wage will attract superior drivers and improve public works"].) Excluding this labor from coverage under section 1772 despite its critical role makes no sense.

Also calling into question the majority's interpretation: It flies in the face of the DIR's *consistent* position covering mobilization work under section 1772. As the DIR's Division of Labor Standards and Enforcement argues in its amicus curiae brief and illustrates in the past coverage determinations that it provides in its request for judicial notice, the agency has for

decades followed *Sansone* and interpreted the section as covering mobilization labor based on the labor's critical relationship to covered work. Neither defendants (Fonseca McElroy Grinding Co. Inc. and Granite Rock Company) nor the majority identify any circumstance where the DIR has determined that mobilization is not covered.

Because plaintiffs' mobilization work critically facilitated the public works roadway construction project, section 1772 entitled them to prevailing wages for this labor. They performed this labor "in the execution of" the contract for the roadway project, and section 1772's language therefore "deemed" them "to be employed upon public work." (§ 1772.) But the majority narrows this statutory language beyond recognition. So with respect, I dissent.

**CUÉLLAR, J.**

**I Concur:**

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Mendoza v. Fonseca McElroy Grinding Co., Inc.

---

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding** XX on request by 9th Circuit (Cal. Rules of Court, rule 8.548)
**Review Granted (published)**
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S253574
**Date Filed:** August 16, 2021

---

**Court:**
**County:**
**Judge:**

---

**Counsel:**

Justice At Work Law Group, Tomas E. Margain; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiffs and Appellants.

Altshuler Berzon, Eileen Goldsmith and Zoe Palitz for International Association of Sheet Metal, Air, Rail & Transportation Workers, Sheet Metal Workers' Local Union No. 104 as Amicus Curiae on behalf of Plaintiffs and Appellants.

David Balter, Kristin García, Luong Chau and Lance Grucela for Department of Industrial Relations, Division of Labor Standards Enforcement as Amicus Curiae on behalf of Plaintiffs and Appellants.

Simpson, Garrity, Innes & Jacuzzi, Paul V. Simpson and Sarah E. Lucas for Defendants and Respondents.

Rutan & Tucker, Paul Aherne and Alyssa Roy for Construction Employers' Association as Amicus Curiae on behalf of Defendants and Respondents.

Cook Brown, Dennis B. Cook and Stephen McCutcheon for Modular Building Institute, Northern Alliance of Engineering Contractors and Western Electrical Contractors Association, Inc., as Amici Curiae on behalf of Defendants and Respondents.

Sweeny, Mason, Wilson & Bosomworth and Roger M. Mason for United Contractors as Amicus Curiae on behalf of Defendants and Respondents.

Jeffer Mangels Butler & Mitchell, Kerry Shapiro, Matthew D. Hinks and Martin P. Stratte for California Construction and Industrial Materials Association as Amicus Curiae on behalf of Defendants and Respondents.

Ogletree, Deakins, Nash, Smoak & Stewart, Robert R. Roginson and Ryan H. Crosner for Associated General Contractors of California as Amicus Curiae on behalf of Defendants and Respondents.

Atkinson, Andelson, Loya, Ruud & Romo, Robert Fried, Thomas A. Lenz and Elizabeth P. Lind for Associated Builders and Contractors of California as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stuart B. Esner
Esner, Chang & Boyer
234 East Colorado Boulevard, Suite 975
Pasadena, CA 91101
(626) 535-9860

Tomas E. Margain
Justice At Work Law Group
84 West Santa Clara Street, Suite 790
San Jose, CA 95113
(408) 317-1100

Paul V. Simpson
Simpson, Garrity, Innes & Jacuzzi, P.C.
601 Gateway Boulevard, Suite 950
South San Francisco, CA 94080
(650) 615-4860

Robert R. Roginson
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
(213) 457-5873