Filed 1/31/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NABORS CORPORATE SERVICES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF LONG BEACH et al., <br><br> Defendants and Respondents. | B328026 <br><br> (Los Angeles County Super. Ct. No. 21STCV20175) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Haynes and Boone, Daniel L. Geyser, Mark D. Erikson and Andrea Levenson for Plaintiff and Appellant.

Best Best & Krieger, Christopher M. Pisano and A. Patricia Ursea for Defendant and Respondent City of Long Beach.

Mitchell Silberberg & Knupp, Hayward J. Kaiser, Valentine A. Shalamitski and Alexandra L. Anfuso for

Defendants and Respondents California Resources Long Beach, Inc., and Tidelands Oil Production Company.

_____

## I.    INTRODUCTION

Plaintiff Nabors Corporate Services, Inc. (Nabors) appeals from the dismissal of its complaint against defendants[1] following the sustaining of demurrers.  According to Nabors, the trial court erred when it ruled that Nabors had no right to indemnity against defendants under Labor Code sections 1781 and 1784.[2] We affirm the dismissal of the section 1784 claim against Tidelands, but reverse the dismissal of Nabors's section 1781 claim against the City.

_____

[1]    Defendants are the City of Long Beach (the City) and two corporations, California Resources Long Beach, Inc. and Tidelands Oil Production Company.  According to the operative complaint, there was "a unity of interest, ownership and control" between the two corporate defendants, and they have filed a joint respondents' brief.  We will refer to them collectively as Tidelands.

[2]    All further statutory references are to the Labor Code unless otherwise indicated.  Although Nabors asserted other claims against defendants under the Labor Code and common law, it challenges on appeal only the court's dismissal of its statutory indemnity claims under sections 1781 and 1784 and the related claim for declaratory relief.

## II.   FACTUAL BACKGROUND[3]

A.   *Relationship of the Parties*

Between 2012 and 2014, Nabors performed "oil well plug and abandonment" work (the work) for the benefit of the City on wells located near the site of the Gerald Desmond Bridge Replacement Project (the project).  The City originally contracted with Tidelands to provide certain services on the project, including the work, but Tidelands then subcontracted with Nabors for the actual performance of the work (the subcontract).

B.   *The Subcontract*

Prior to executing the subcontract in March 2012, Nabors had never performed work for Tidelands on a public works project.  In 2011, in anticipation of the commencement of the work, the City and Tidelands discussed whether the work covered by the subcontract was "public work" and concluded that it was not subject to prevailing wage laws.[4]  Thus, when Tidelands

---

[3]   We state the facts consistent with the standard governing our review, accepting as true all well-pleaded material allegations, but not contentions, deductions or conclusions of fact and law, and we also consider matters which may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

[4]   "California's Labor Code requires that certain kinds of jobs performed on a public works project be compensated at a per diem rate no less than the prevailing wage paid in the area where the work is done.  ([ ] § 1771.)  The Labor Code delineates with specificity the kinds of 'public work' covered by the prevailing

3

solicited Nabors to respond to a request for proposal, it represented that the work was "'regular work'" and "'nothing out of the ordinary.'"  And, at no time during the bid process did defendants indicate that the work was public work or that prevailing wage laws applied.  As a result, the executed subcontract included Nabors's proposed maximum hourly rates of employee reimbursement based on the description of the work provided by defendants.  Certain of those maximum hourly rates were "obviously and significantly" lower than what Nabors would have been required to pay its employees pursuant to the prevailing wage laws.  Nabors commenced the work under the terms of the subcontract and, during the performance of the work, defendants did not advise Nabors that the work was public work subject to prevailing wage laws.

C.    *Class Action*

On April 2, 2015, after Nabors had completed the work, two of its employees filed a state-court class action against it, the City, and Tidelands seeking to recover prevailing wages for the services they performed on the work.  Nabors removed the matter to the federal district court, which then dismissed the class action against the City and Tidelands in response to defendants' motions to dismiss and compel arbitration pursuant to clauses in Nabors's employee agreements.

---

wage statutes.  (See §§ 1720–1720.9.)"  (*Mendoza v. Fonseca McElroy Grinding, Inc.* (2021) 11 Cal.5th 1118, 1121, fn. omitted (*Mendoza*).)

4

D.    *Arbitration Awards and Judgments*

Following the dismissal order, an unspecified number of Nabors's employees filed demands for individual arbitration of the prevailing wage claims previously asserted on their behalf in the putative class action.  Three of those arbitrations then proceeded to hearings on the merits before three different arbitrators, each of whom found that the work was public work.  Based on those findings, the arbitrators entered awards requiring Nabors to pay the employees the difference between the wages they were paid for the work and the wages they were entitled to receive under prevailing wage laws—a total of $443,150—plus penalties, interest, and attorney fees and costs incurred in the arbitrations.

After receiving their individual awards, the three employees successfully petitioned the federal district court to confirm them as judgments.  Additional arbitration hearings were then conducted, resulting in further individual awards and petitions to confirm them.

## III.    PROCEDURAL BACKGROUND

A.    *Defendants' Original Demurrers*

On May 28, 2021, Nabors filed the original complaint in this action against defendants asserting, among other claims, a cause of action against Tidelands for indemnity under section 1784, a cause of action against the City for indemnity under section 1781, and related claims for declaratory relief under those two statutes.

5

On July 27, 2021, the City demurred to the complaint, challenging each cause of action asserted against it.

On August 13, 2021, Tidelands demurred to the complaint arguing, among other things, that the "[s]ection 1784 claim fail[ed] as a matter of law because [that section] did not become effective until January 1, 2015, it [was] not retroactive, and [the work] was completed by early 2014, before [s]ection 1784 imposed any new obligations on [Tidelands]."

On January 3, 2022, the trial court held a hearing on the demurrers and issued a minute order sustaining the City's demurrer to the section 1781 claim with leave to amend. Following further briefing, the court issued a February 22, 2022, minute order concluding that, "[b]ased on the governing law, the [c]ourt holds that [Nabors's] cause of action improperly calls for a retroactive application of section 1784, which can only be interpreted as applying prospectively to public work contracts executed after January 1, 2015." The court therefore ruled that "[Tidelands'] demurrers to [the] third cause of action under [section] 1784 and the sixth cause of action for declaratory relief based on a violation of that same statute are [sustained], without leave to amend. Because these are the only remaining causes of action pled by [Nabors] against [Tidelands], the [c]ourt sustains [Tidelands'] demurrer in its entirety."[5]

---

[5] Following the rulings on the demurrers, Nabors filed a motion for clarification and reconsideration of the court's ruling on the original demurrers. Following further briefing, the court clarified and modified its ruling by permitting Nabors to file a first amended complaint against defendants asserting "new and different" causes of action "distinct from those on which the [c]ourt ha[d] already ruled."

6

B.      *Demurrer to the First Amended Complaint*

On March 24, 2022, Nabors filed a first amended complaint. The first cause of action, against the City only,[6] again sought indemnity pursuant to section 1781. In addition to realleging that three employees had received arbitration awards finding that the work was public work and requiring payment of prevailing wages, the amended complaint included new allegations that the three awards had each been confirmed as judgments in the federal district court and that additional employee arbitration hearings had been conducted, "along with actions to confirm those arbitration awards . . . ."

On May 2, 2022, the City filed a demurrer to the first amended complaint. As to the section 1781 claim, the City argued (1) an arbitrator's award finding that work performed by an employee is public work does not qualify under section 1781 as a decision by a court classifying work as public work; (2) an order confirming an arbitration award is not a decision by a court classifying work as public work because the court's review on confirmation "does not involve a determination of the merits but rather is limited to ensuring that minimal due process was afforded"; and (3) the legislative history of section 1781 showed that it was amended to limit the circumstances under which an awarding body could be held liable for indemnity and the express limitation requiring public work determinations to be made by courts evinced an intent to exclude decisions by arbitrators.

---

[6]     The first amended complaint also asserted against the City and Tidelands a second cause of action for quantum meruit and a third cause of action for declaratory relief.

7

On June 20, 2022, the trial court held a hearing on the demurrers to the first amended complaint. On August 1, 2022, the court issued an order sustaining the City's demurrer to the section 1781 claim without leave to amend. The court first considered whether the disputed language of section 1781 could reasonably be construed to include arbitration decisions. Because the court found the language regarding "any decision" by "a court" ambiguous, it considered the legislative history provided by the City and the public policy underlying section 1781 and concluded: "[S]ection 1781 does not encompass arbitration. At the time section 1781 was adopted in September of 2003, arbitration was well established as a method of alternative dispute resolution. If the Legislature had wished to include arbitration proceedings as a method by which liability in connection with a public works project might be created, the Legislature was more than capable of doing so explicitly. Although the evidence before the [c]ourt does not expressly show that the Legislature rejected arbitration as a type of proceeding that could create liability under section 1781, the pointed absence of arbitration from the legislative history and analysis, at a time when arbitration was widely accepted as a method of alternative dispute resolution, suggests that the Legislature did not contemplate arbitration decisions as a valid means of establishing section 1781 liability."

The trial court also rejected Nabors's assertion that the federal district court's confirmation of the arbitrators' awards as judgments qualified them as decisions made by a court under section 1781. According to the court, "Under Code of Civil Procedure section 1287.4, a judgment confirming an arbitration award has the same force and effect as any other civil judgment.

8

However, liability under section 1781 is not triggered by a judgment . . . .  Instead, section 1781 requires a decision classifying the work to be done as a public work.  As [the City] has pointed out, the Federal Arbitration Act and supporting case law expressly preclude an evaluation of the merits of an arbitration award.  The [c]ourt agrees with [the City] that the judgments confirming the arbitration award are not, as a matter of law, decisions classifying the work as a public work."

C.    *Judgment of Dismissal*

On April 5, 2023, the trial court entered a judgment dismissing, among other claims, the causes of action under sections 1781 and 1784.  On April 17, 2023, Nabors timely appealed from the judgment of dismissal.

## IV.    DISCUSSION

A.    *Standard of Review*

We review a trial court's ruling on a demurrer de novo. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.] We also consider matters which may be judicially noticed.' [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]"  (*Ibid.*)

9

B.     *Statutory Interpretation*

Nabors's challenges to the rulings on the two Labor Code claims raise issues of statutory interpretation concerning the meaning of disputed language in section 1781 and whether section 1784 can be applied retroactively.[7]  "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.)

---

[7]     The issue of whether a statute is to apply prospectively or retroactively must be determined as a matter of statutory interpretation.  (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206 (*Evangelatos*).)

10

C.    *Prevailing Wage Law*

Sections 1781 and 1784 are part of California's prevailing wage law (§ 1720 et seq.), "a minimum wage provision whose overall purpose is 'to protect and benefit employees on public works projects.' [Citation.] . . . [¶]  Those employed on 'public works' must generally be paid at least the 'prevailing rate of per diem wages for work of a similar character' in the area.  (§ 1771.) . . . [¶]  A contractor or subcontractor that does not pay the prevailing wage rate on a public works project is liable for the deficiency and subject to a penalty.  (§ 1775, subd. (a).)  The statutory payment obligation is independent of any contractual requirement.  [Citation.] . . .

"The prevailing wage law describes with particularity the kind of 'public works" that fall within its scope.  Since the law's adoption in 1931, it has encompassed certain 'construction or repair work.'  [Citation.]  Over the years, the statutory definition of 'public works' has been amended to clarify and expand the scope of the activities it embraces."  (*Mendoza, supra*, 11 Cal.5th at pp. 1123–1124, fn. omitted.)

D.    *Section 1781 Claim Against the City*

Nabors contends that the trial court erred when it interpreted section 1781 to exclude awards made by arbitrators, and later confirmed as judgments, from the types of court decisions that trigger liability for indemnity under that section.

11

1.    Legal Principles

To state the elements of a section 1781[8] claim, Nabors was required to allege that:  (1) the City, as the body awarding a contract for a public work,[9] failed to identify the work as a public work in the bid specification or in the contract documents before the bid opening or awarding of the contract; (2) "a court" made a decision, after the time the bid was accepted, that the work was a public work; and (3) Nabors incurred increased costs in the form of wages and penalties as a result of that decision.  (§ 1781.)

2.    Analysis

The City challenged on demurrer only the sufficiency of the allegations in support of the second element of the section 1781 claim, namely, facts showing a decision by a court classifying the

[8]    Section 1781 provides, in part, that a contractor may "bring an action . . . to recover from the body awarding a contract for a public work . . . any increased costs incurred by the contractor as a result of *any decision by* the body, the [Department], or *a court* that classifies, after the time at which the body accepts the contractor's bid . . . , *the work* covered by the bid or contract *as a 'public work,'* . . . if that body, before the bid opening or awarding of the contract, failed to identify as a 'public work' . . . in the bid specification or in the contract documents that portion of the work that the decision classifies as a 'public work.'"  (Italics added.)

[9]    "The body awarding" as used in section 1781 is generally a public entity or agency such as the City.  We therefore use the term "public entity" when referring to the body awarding the contract.

12

work as public work.  In our view, the trial court's ruling is contrary to the plain meaning of section 1781, which references "any decision by . . . a court that classifies . . . the work as a 'public work.'"  A "decision" is "the act or process of deciding" or "a determination arrived at after consideration" or "a report of a conclusion."  (Merriam-Webster's Online Dict. <https://www.merriam-webster.com/dictionary/decision> [as of Jan. 26, 2025], archived at <https://perma.cc/R2XJ-MUVQ>.)  The order and judgment confirming the arbitrator's award is plainly a "decision."  Moreover, when the Legislature chose the term "a court" to modify the type of "decision," it did not provide further specification, qualification, or limitation—such as, for example, designating a California state trial court, a federal trial court, or a sister-state trial court as the decision maker.  Thus, a federal district court is "a court" within the meaning of section 1781.  As to whether the federal district court's order "classifie[d] . . . the work as a public work," we conclude that it did, as the award confirmed by the district court included a finding that the work was a public work.

The City, however, contends that because "arbitrators" are not included in the list of decision makers in section 1781, the plain text of the statute excludes court orders confirming such awards.  This contention is based on the City's concern that the merits of the arbitrators' decisions are not subject to court review during the confirmation process.  The City's argument assumes that a decision rendered by an arbitrator is less reliable than one rendered by a trial court.  But under both federal and state law, a judgment entered following confirmation of a contractual arbitration award has the same force and effect as a judgment rendered after a court determination, regardless of whether an

13

arbitrator, not a sitting judge, made the underlying factual and legal determinations. (*NTCH-WA, Inc. v. ZTE Corp.* (9th Cir. 2019) 921 F.3d 1175, 1180 ["A federal-court order confirming an arbitration award has 'the same force and effect' as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect"]; *Fid. Fed. Bank, FSB v. Durga Ma Corp.* (9th Cir. 2004) 387 F.3d 1021, 1023 ["A judgment confirming an arbitration award is treated similarly to any other federal judgment"]; *Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, 23 ["When judgment is entered after confirming the award, '[t]he judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action . . . .' (Code Civ. Proc., § 1287.4 . . . .)"].)

The City's argument also assumes that a trial court considering the merits of a section 1781 cause of action is required to determine, not only whether a "decision" was made by "a court," but also whether that decision was correct. According to the City, because the federal district court decisions here confirmed arbitrators' awards, the trial court was free to disregard those orders when determining whether the section 1781 claim stated a cause of action. That interpretation, however, is contrary to the purpose of section 1781, which provides contractors an express right to indemnity, the obvious purpose of which is to protect them from unanticipated losses under the defined circumstances. There is nothing in the text of the enactment or its legislative history to suggest that, in creating that right, the Legislature intended to confer upon the public entity a right to relitigate post-bid prevailing-wage decisions that, on their face, fit the definition of the statute. Accordingly, the federal court judgments and orders entered in

14

this case qualify as decisions of a court for purposes of indemnity under the plain meaning of section 1781.

Even assuming, however, that the language of section 1781 defining the second element of the indemnity claim was ambiguous, the legislative history of that section also supports our conclusion. That history confirms that the purpose of the enactment is to shift responsibility to the public entity for unanticipated losses incurred by a contractor due to post-bid prevailing-wage determinations in the event it failed to inform the contractor during the bid process that the work was a public work. According to a committee analysis of the proposed enactment (Senate Bill No. 966), "contractors should not be the guarantor of prevailing wages in such cases. The party that benefits from the construction improvement and the public agency that triggers the prevailing wage requirement by contributing public funds for the benefit of the public should pay the full value of the labor rendered on the project. If prevailing wages are the value of labor rendered on a project, then the public agency and the project owner would receive a windfall if contractors mistakenly paid less than prevailing wages and then were unable to obtain reimbursement for the added cost of prevailing wages." (Assem. Com. on Labor & Employment, Analysis of Sen. Bill No. 966 (2003–2004 Reg. Sess.), July 9, 2003, p. 2.) By creating a statutory private right of action to indemnity, the Legislature sought to shift the risk of loss to the public entity in the circumstances specified by the statute. In doing so, it allowed the contractor to rely on the information provided by the public entity during the bid process concerning whether mandatory prevailing-wage rates applied to the work covered by the bid and placed the burden of disclosure on the

15

public entity.  Extending the benefits of the statute to contractors like Nabors—who relied on the public entity during the bid process and then incurred unanticipated costs as the result of litigation filed after completion of the work—is thus consistent with the statute's risk-shifting rationale and remedial purpose. It places contractors held liable to employees after judgments entered following arbitrations on equal footing with contractors whose liability is determined in the first instance by a trial court.

The City nonetheless maintains that the Legislature's intent to exclude decisions confirming arbitration awards is shown in the partial legislative history it submitted in support of its demurrer.  That history shows that the disputed language— "the [awarding] body, the [Department], or a court"—was added by an amendment to the original text of the statute, which referred to "any decision" without specifying a decision maker. According to the City, that language was amended in response to opposition voiced by local public entities that disagreed with the statute's imposition of increased liabilities on them.  But, contrary to the City's assertion, there is nothing in the legislative history that sheds light on the meaning of the term "a court." The cited history provides that "the amendments rewrite the bill *without changing intent*.  The changes are intended to address concerns by public agencies by narrowing the circumstances in which liability for increased costs would be shifted to a public entity or entity undertaking a public works project."  (Italics added.)  Arbitrators are not mentioned; and the statute does not make any distinction between court decisions that confirm arbitration awards and those that do not.

16

E.    *Section 1784 Claim Against Tidelands*

Nabors contends the trial court erred when it concluded that section 1784 could not be applied retroactively to hold Tidelands liable for its past conduct in failing to disclose that the work was a public work.  According to Nabors, section 1784 did not impose new liability for past conduct; it simply modified or clarified the existing remedies available to contractors who suffered losses from such failures after the effective date of the statute.  Nabors also contends that section 1784 is not based solely on hiring parties' past conduct, but rather focuses primarily on "the proper *reallocation of unexpected costs*, which did not come into existence until after the statute's enactment." Finally, Nabors argues that the text of section 1784 demonstrates that the Legislature intended it to apply retroactively.

1.    <u>Legal Principles</u>

a.    Section 1784

On July 14, 2014, the Legislature enacted Assembly Bill No. 1939, effective January 1, 2015.  (Stats. 2014 ch. 161, § 1.) The enactment, codified as section 1784,[10] authorized a

---

[10]    Section 1784 provides, in pertinent part:  "(a) [A] contractor may bring an action in a court of competent jurisdiction to recover from the hiring party that the contractor directly contracts with, any increased costs attributable solely to the provisions of this chapter, including, but not limited to, the difference between the wages actually paid to an employee and the wages that were required to be paid to an employee under this chapter, any penalties or other sums required to be paid

contractor to bring an action to recover from a "hiring party that the contractor directly contracts with" increased costs incurred as a result of a decision, made after the hiring party accepted the contractor's bid, that classified a project as a public work. (§ 1784.)

b.     Retroactivity

A statute is considered retroactive in effect if it implicates existing rights or imposes new duties. "As [our California Supreme Court] said more than 50 years ago, a retroactive or retrospective law "'is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.'" [Citations.] Similarly, the United States Supreme Court has stated: '"[E]very statute, which takes

under this chapter, and costs and attorney's fees for the action incurred by the contractor as a result of any decision by the Department of Industrial Relations, the Labor and Workforce Development Agency, or a court that classifies, after the time at which the hiring party accepts the contractor's bid, awards the contractor a contract under circumstances when no bid is solicited, or otherwise allows construction by the contractor to proceed, the work covered by the project, or any portion thereof, as a 'public work,' as defined in this chapter, except to the extent that either of the following is true:  [¶]  (1) The owner or developer or its agent expressly advised the contractor that the work to be covered by the contract would be a 'public work,' as defined in this chapter, or is otherwise subject to the payment of prevailing wages.  [¶]  (2) The hiring party expressly advised the contractor that the work subject to the contract would be a 'public work,' as defined in this chapter, or is otherwise subject to the payment of prevailing wages."

18

away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.'" [Citation.]  Phrased another way, a statute that operates to 'increase a party's liability for past conduct' is retroactive.  [Citation.]" (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839.)

"Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear with respect to a particular statute, the Legislature's generally applicable declaration in [Civil Code] section 3 provides the default rule:  'No part of [the Penal Code] is retroactive, unless expressly so declared.'  [The California Supreme Court has] described section 3, and its identical counterparts in other codes (e.g., Civ. Code, § 3; Code Civ. Proc., § 3), as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.'  [Citations.]  In applying this principle, [the court has] been cautious not to infer retroactive intent from vague phrases and broad, general language in statutes.  [Citations.]  Consequently, "'a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective.'"  [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319–320.)

19

2. <u>Analysis</u>

We disagree with Nabors's assertion that the indemnity obligation section 1784 imposes on hiring parties is not a new duty, but rather a different remedy for their violations of pre-existing duties under sections 1774 and 1775. Fairly construed, those statutes do not create or imply indemnity rights or duties between contractors and hiring parties.

Section 1774 provides that "[t]he contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract." That provision, however, has been interpreted to require that "a contractor and a subcontractor must pay prevailing wages to their respective employees on a public works project, not that a contractor must pay prevailing wages to a subcontractor's employees." (*Violante v. Communities Southwest Development & Construction Co.* (2006) 138 Cal.App.4th 972, 978.) It therefore cannot be interpreted as implying a right to indemnity from the contractor.

Section 1775[11] authorizes the Labor Commissioner to impose administrative penalties, payable to the state, on a

---

[11]    Section 1775, subdivision (a)(1) provides: "(a) [¶] (1) The contractor and any subcontractor under the contractor shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit not more than two hundred dollars ($200) for each calendar day, or portion thereof, for each worker paid less than the prevailing wage rates as determined by the director for the work or craft in which the worker is employed for any public work done under the contract by the contractor or,

contractor or a subcontractor that fails to pay prevailing wages. But subdivision (b) of that section provides that a contractor is not subject to penalties for a subcontractor's failure to pay prevailing wages, unless the contractor was aware of that failure or otherwise did not comply with certain enumerated duties

---

except as provided in subdivision (b), by any subcontractor under the contractor."

Subdivision (b) provides: "(b) If a worker employed by a subcontractor on a public works project is not paid the general prevailing rate of per diem wages by the subcontractor, the prime contractor of the project is not liable for any penalties under subdivision (a) unless the prime contractor had knowledge of that failure of the subcontractor to pay the specified prevailing rate of wages to those workers or unless the prime contractor fails to comply with all of the following requirements:  [¶]  (1) The contract executed between the contractor and the subcontractor for the performance of work on the public works project shall include a copy of the provisions of this section and Sections 1771, 1776, 1777.5, 1813, and 1815.  [¶]  (2) The contractor shall monitor the payment of the specified general prevailing rate of per diem wages by the subcontractor to the employees, by periodic review of the certified payroll records of the subcontractor.  [¶]  (3) Upon becoming aware of the failure of the subcontractor to pay his or her workers the specified prevailing rate of wages, the contractor shall diligently take corrective action to halt or rectify the failure, including, but not limited to, retaining sufficient funds due the subcontractor for work performed on the public works project.  [¶]  (4) Prior to making final payment to the subcontractor for work performed on the public works project, the contractor shall obtain an affidavit signed under penalty of perjury from the subcontractor that the subcontractor has paid the specified general prevailing rate of per diem wages to his or her employees on the public works project and any amounts due pursuant to Section 1813."

21

intended to ensure the subcontractor's compliance with the prevailing wage law.  Thus, although section 1775 imposes certain statutory duties on contractors to comply with prevailing wage laws, it does not require that contractors who fail to comply with those duties indemnify subcontractors found liable for their own failure to pay prevailing wages.

Section 1784, by contrast, creates a civil right of action between private parties that was not available to subcontractors, such as Nabors, prior to its January 1, 2015, effective date.  Thus, when Tidelands accepted Nabors's bid proposal in 2012, it had no civil liability for failing to disclose to parties with whom it directly contracted that the work covered by the bid was public work.  At the time, liability for such nondisclosures was limited to the public entity under section 1781.  We therefore conclude that section 1784 does not merely clarify preexisting rights or expand remedies based on preexisting duties; it creates new rights to indemnity based on conduct by hiring parties that did not support them prior to its enactment.

We also disagree with Nabors's contention that the conduct upon which section 1784 focuses, and which triggers the duty to indemnify, is the post-bid "public work" classification by a designated decision maker.  The conduct which creates liability under the statute is stated as the hiring party's failure to "expressly advise[] the contractor that the work subject to the contract would be a 'public work . . . .'"  (§ 1784, subd. (a)(2).)  Further, the purpose of the statute,[12] and of indemnity in

---

[12] The sponsors of Assembly Bill No. 1939 explained its remedial purpose as similar to section 1781:  "This is a non-controversial bill to extend an existing principle regarding the recovery of increased costs [for prevailing wages] when a project

general,[13] is to place the burden of loss on the party primarily responsible. Thus, by providing a remedy consistent with indemnity principles, the statute's focus is on the conduct of the hiring party during the bid process, not the timing of the loss incurred by the contractor.

Finally, we disagree that either the text or the legislative history of section 1784 demonstrates an intent to apply it retroactively to hiring parties who failed to make the required disclosures prior to its effective date. The statute does not mention retroactivity and, when read in context, its text does not unambiguously show an intent to give it retroactive effect. Although the text and legislative history[14] of section 1784

is deemed to be a public work. . . . [¶] . . . [¶] Existing law [e.g. section 1781] already provides remedies to contractors to recover such increased costs on contracts awarded by an 'awarding body' (generally a public agency) under certain circumstances. . . . [¶] . . . [¶] This bill proposes to establish similar remedies for a contractor to recover increased costs from the party it directly contracts with (such as a private developer) under similar circumstances." (Assem. Com. on Judiciary, (Assem. Com. on Labor & Employment, Synopsis of Assem. Bill No. 1939 (2013–2014 Reg. Sess.), Hearing Apr. 29, 2014, pp. 1–2.)

[13] "Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.] This obligation may be expressly provided for by contract [citation], it may be implied from a contract not specifically mentioning indemnity [citation], or it may arise from the equities of particular circumstances [citation]." (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628.)

[14] The legislative history of section 1784 shows that it was intended to extend the existing indemnity rights of contractors

demonstrate that the Legislature intended to remedy a perceived unfairness in the prevailing wage law concerning contractors who bear the burden of unanticipated costs imposed by post-bid prevailing-wage determinations, a remedial purpose alone is not enough to demonstrate the requisite retroactive intent.  As the Supreme Court explained in *Evangelatos, supra*, 44 Cal.3d 1188, "[A] remedial purpose does not necessarily indicate an intent to apply the statute retroactively.  Most statutory changes are, of course, intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively." (*Id.* at p. 1213.)

---

against public entities under section 1781 to hiring parties as well.  "As already provided under existing law, the party responsible for providing notice of a public work and attendant prevailing wage requirements is liable for prevailing wage deficiencies if the contractor does not pay the prevailing wage required.  This bill would further that policy by requiring the owner or developer of the project to be liable for the prevailing wage deficiencies if the owner or developer does not notify the contractor of the prevailing wage requirement."  (Senate Com. on Judiciary, Analysis on Assem. Bill No. 1939 (2013–2014 Reg. Sess.), June 10, 2014, pp. 6–7.)

## V. DISPOSITION

The order sustaining the City's demurrer and the judgment of dismissal in its favor are reversed and the matter is remanded with instructions to enter a new order overruling the City's demurrer to the section 1781 cause of action.  Nabors is awarded its costs on appeal against the City.

The order sustaining Tidelands's demurrer to the section 1784 cause of action and the judgment of dismissal in its favor are affirmed.  Tidelands is awarded costs on appeal against Nabors.

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

25